**Edna L. RENDON and Pete Rendon, Appellants,**

v.

**Carmen SANCHEZ, Appellee.**

No. 04-86-00578-CV.

Court of Appeals of Texas, San Antonio.

Sept. 2, 1987.

later date by the County Attorney's Office.

David R. Weiner, San Antonio, for appellants.

J. Anthony Guajardo, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Plaintiffs, Pete and Edna Rendon, appeal from a judgment in favor of defendant and cross-plaintiff, Carmen Sanchez. The Rendons sued Sanchez for breach of contract and she countersued, alleging violation of the Deceptive Trade Practices-Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41 *et seq.* (Vernon Supp.1987). Plaintiffs challenge the legal sufficiency of the evidence to support the jury's answers to special issues (four points of error) and also claim in the alternative, should the judgment be affirmed, that the trial court incorrectly determined the amount of damages. We affirm the judgment.

In May of 1985, Sanchez answered the Rendons' newspaper advertisement, offering to sell their Mexican restaurant, Los Paisanos No. 3. After seeing the restaurant, and conferring with the Rendons and their attorney, Sanchez executed a contract, which provided in part:

> Seller [the Rendons] agrees to sell, and buyer [Sanchez] agrees to buy all the assets of the restaurant business, owned by seller, and consisting of those assets described and enumerated on the 'List of Assets' attached hereto, ... The assets being sold are those of the restaurant owned by seller and prior hereto known as 'Los Paisanos No. 3' ... It is hereby understood and acknowledged by the parties that sellers have the exclusive common law and statutory right to use the name 'Los Paisanos' and further, that no interest to the use or right to use of said name is hereby affected in any way.

It further required Sanchez to assume all bills and expenses of the business and all responsibility for compliance with the lease of the building. Although there was no sublease executed, the contract required her to pay the sum of $2,640.00 per month for the leased premises. Sanchez further agreed to pay a total of $25,000.00 to the Rendons. She paid $10,000.00 down, and she was obligated to pay them six monthly payments of $538.00 with the balance of $13,722.00 due by November 1, 1985. (The sum of $538.00 was the monthly amount the Rendons owed on a bank note for the equipment.)

Sanchez paid the rent and the sum of $538.00 each month through September of 1985, ($10,560.00 and $2,152.00 respectively). However, she failed to make either payment in October, and vacated the restaurant on or about October 13. The Rendons were given the key, but she said they threatened to call "the cops" if she returned.

The Rendons sued for the money due under their bank note, rent payments from October 1985 to trial, interest on the Rendons' bank note, other consequential damages and attorney's fees.

Sanchez responded by filing a counterclaim alleging the Rendons violated the Deceptive Trade Practices Act, claiming that the Rendons induced her to sign the contract by making misleading and false representations about the volume of business, the amount of money the restaurant generated, the equipment and the building's state of repair, as well as the need for inspections. She further claimed that the Rendons were negligent in making these misrepresentations. In addition she alleged that had she known of the real conditions which the Rendons failed to disclose, she would not have entered into the contract. She cited violations based on § 17.-46(b)(7), (21)(23) of the Act. Further she alleged that the Rendons actions were unconscionable, § 17.50(a)(3).

The evidence shows that the Rendons operated two restaurants, Las Paisanos No. 1 and No. 2, for several years. In 1984, they leased the premises for No. 3,

the subject of this suit. In so doing they obligated themselves to pay the rent each month and they undertook a bank note obligation for $20,000.00. They also stated they expended several thousand dollars to establish the Mexican restaurant. However, within a few months, they entered into an agreement on the restaurant with a person named Colby on the same terms that Sanchez later undertook. Colby operated the restaurant about six months and failed. He apparently was permitted to use the name "Los Paisanos No. 3."

Rendon testified they still owed the bank $15,800.00 at the time of trial in July, 1986. After Sanchez vacated the restaurant, a person named Rigo had undertaken the same obligations, paying to the Rendons the sum of $8,000.00 and paying the rent plus the sum of $538.00 per month (the Rendons' monthly bank note payment) for seven months. After Rigo failed, another person named Wong Tang had undertaken the same obligations ($25,000.00 plus rent plus $538.00 per month to the Rendons). Tang paid down the sum of $8,000.00 and was to begin operating the restaurant in September, 1986 (after the date of the trial herein). Rendon acknowledged that none of the money paid down had been applied to pay off the bank note. The evidence showed that by the time of trial the Rendons had sold the restaurant four times for "down payments" totaling $31,000.00, had the rent of $2,640.00 per month on the three year lease paid by others for 17 months, and received payments of $538.00 per month for about 17 months. The Rendons retained the equipment and the lease. They brought suit on a contract against only one buyer: Sanchez.

Although the plaintiffs argue on appeal that the only thing they sold to Sanchez was the equipment (assets) under the contract, they both acknowledged at trial that they sold the "business." Rendon testified that business was worth "a little more than I sold it to her for ..." "It was open, going ..." The ad Sanchez answered stated "Mexican restaurant, take over $20,000 note. $5,000 down."

Sanchez testified she understood she was buying a complete operation. The Rendons told her to continue using their license and insurance until they expired, however, she was forbidden to do this and was required to obtain a new license since the name Los Paisanos No. 3 could not be continued in use. She and her husband paid for a new liquor license, a deposit of $1,900.00 for the phone, plumbing bills, electrician bills, new inspections and installations that the new inspections required. She said the Rendons told her she would be able to go ahead and run the business as it was, but, she said, she was not permitted to do so and was delayed thereby in opening the restaurant. Subsequently the ice machine malfunctioned, the air conditioning proved inadequate, ceiling fans had to be installed, and a person who knew how to obtain permits and licenses had to be employed.

Further, Sanchez testified that the Rendons stated that the restaurant made $300.00 each day from breakfast patrons alone. They represented that the restaurant was a good investment and would produce good income. She told about the faulty equipment, saying they represented to her it was in good condition, whereas she replaced some of it, including the ice machine. The electric connections were found to be faulty. She said the Rendons failed to advise her new inspections, new insurance in the amount of $500,000.00, and repairs would be needed. She was delayed one month in opening the restaurant because of all these matters. She testified they misrepresented the volume of business the restaurant had previously been doing, that she was assured the restaurant was profitable. Instead of $300.00 a day on breakfasts alone, on average she grossed about $56.00 to $86.00 for 12 hours. On only one or two weekend days she grossed $180.00 to $200.00 "tops." Her testimony regarding all damages suffered was that she and her husband lost about $30,000.00. They recouped some losses by selling the replacement equipment they had purchased for $10,000.00. She testified the average monthly income was about $2,176.00 while the expenses were about $9,163.00 after the restaurant opened.

The first special issue inquired if Sanchez' failure to perform her obligations under the written contract was the producing cause of any damages to the Rendons. The jury answered "No." The jury then found, relative to the cross-action, that the Rendons misrepresented either the capacity of a restaurant business to operate at a profit at that location, or that Sanchez could operate a restaurant business under the permits and licenses held by the Rendons. The jury further found such misrepresentation to be the producing cause of damages to Sanchez, that it constituted a false, misleading or deceptive act or practice, that such conduct was unconscionable, and that the Rendons acted knowingly.

The jury awarded Sanchez actual damages of $3,500.00, based on an instruction to consider the elements of damage as the costs attributable to the delayed opening of the business and the difference between the value of the restaurant as represented and as sold to Sanchez. Jury findings supporting an award of actual damages were, as noted above, that the Rendons misrepresented to Sanchez (1) the capacity of a restaurant business to operate at a profit at that location; or (2) that Sanchez could operate a restaurant under the same permits and licenses held by the Rendons [even though she was forbidden to use the name "Los Paisanos No. 3."] Under the evidence presented, the jury was permitted to find unconscionable action or course of action which was defined as an act or practice which to a person's detriment either:

a.) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

b.) results in a gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration.

TEX.BUS. & COM.CODE § 17.45(5) (Vernon Supp.1987).

The jury then found that $10,000.00 should be awarded to Mrs. Sanchez as "additional damages." The jury charge included the following instruction:

'Additional Damages' means an amount which you may in your discretion award as an example to others as a penalty or by way of punishment or as compensation for the inconvenience and expense of litigation, except attorney's fees and court costs, in addition to any amount which may have been found by you as actual damages.

The court later reduced this sum in the judgment.

In three points of error the plaintiffs argue there is legally insufficient evidence (no evidence) to support the jury findings (1) that plaintiffs misrepresented the capacity of the restaurant business to operate at a profit at the location, (2) that any misrepresentations made by plaintiffs were the producing cause of actual damages; and (3) that any unconscionable action or course of action by plaintiffs was the producing cause of actual damages. The jury awarded $2,000.00 attorney fees. The fourth point is that no judgment for attorney fees is proper because there is legally insufficient evidence of any producing cause (points of error one, two, and three) of any actual damages to Sanchez. The argument is that the attorney fees cannot be awarded when actual damages fail.

■ In deciding "no evidence" points, we must view the evidence in the light most favorable to the verdict and consider only the evidence and inferences that support the verdict. *Freeman v. Texas Compensation Insurance Co.*, 603 S.W.2d 186, 191 (Tex.1980). A "no evidence" point of error will be sustained if there is a complete absence of, or no more than a scintilla of, evidence to support the jury findings. *Id.* In applying the test on appellate review in this case, we hold there was some evidence to support each of the challenged jury findings. The four points of error are overruled.

■ In the final point of error plaintiffs argue that the damages, if properly awarded under the evidence, should total $5,500.00, and not $9,500.00, because the jury instruction was incorrect. We first note that no objection like the argument on appeal to this portion of the jury instruc-

tion was made at trial. *See*, TEX.R.CIV.P. 272, 274. Section 17.50(b)(1) permits the trier of fact to award not more than three times the amount of actual damages in excess of $1,000.00 if it is found the conduct was committed knowingly. *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446, 447 (Tex.1984). In this case the jury found the conduct to be committed knowingly. They could award as additional, *discretionary* damages the maximum sum of $7,500.00. Therefore, their discretionary award of $10,000.00 was excessive, and the trial court correctly reduced the sum.

The plaintiffs' argument that the discretionary award must always be based conditionally upon an immediately preceding finding of the defendant "knowingly" committing the acts complained of is not persuasive. In this case one finding of "knowingly" sufficed as a premise for the discretionary award. The fifth point of error is overruled.

The judgment is affirmed.