Thomas E. KENNEMORE, et ux., Petitioners,

v.

Bill BENNETT, Respondent.

No. C–7148.

Supreme Court of Texas.

July 13, 1988.

Rehearing Denied Sept. 14, 1988.

Don Black and Tona Trollinger, Aranson, Black & Shor, Dallas, for petitioners.

Kevin J. Keith, Bailey and Williams, Dallas, for respondent.

MAUZY, Justice.

This is a Deceptive Trade Practices–Consumer Protection Act (DTPA) case arising out of the construction of a new home. Thomas Kennemore and wife Charla Kennemore contracted for builder Bill Bennett to construct a home. After the Kennemores took possession of the home, Bennett brought suit seeking injunctive relief, judicial foreclosure of a mechanic's lien and recovery of the contract price. The Kennemores counterclaimed under the DTPA, alleging that the builder failed to construct the house in a good and workmanlike manner. The Kennemores eventually paid the amounts demanded by Bennett, extinguishing his original action for injunction and foreclosure. Proceeding to trial on the DTPA counterclaim, the trial court directed a verdict for Bennett on grounds that the Kennemores waived their claims that the house contained defects and were thereby estopped from asserting either a contractual or DTPA action. The court of appeals affirmed. 740 S.W.2d 39 (Tex.App.—Dallas 1987). We reverse the judgment of the court of appeals and remand to the trial court.

The Kennemores contracted for Bennett to build a home on property owned by the Kennemores in Dallas County. After construction commenced, the Kennemores executed a mechanic's lien contract in favor of Bennett. Upon completion, but prior to closing, the Kennemores moved into the house and changed the exterior locks. Bennett demanded payment of the contract price plus "extras" totalling $4,542.55. The Kennemores initially refused to close the transaction because of alleged defects, variances from the plans and specifications and a dispute over the charge for "extras."

After Bennett initiated an action for injunctive relief, judicial foreclosure of the mechanic's lien, and contractual damages, the Kennemores paid the amounts demanded by Bennett. Nevertheless, the parties proceeded to trial on the Kennemores' counterclaim for DTPA violations. Specifically, the Kennemores complain of numerous defects that allegedly constitute a misrepresentation under section 17.46(b)(7) and a breach of an implied warranty that the home would be built in a good and workmanlike manner. Tex.Bus & Com.Code Ann. §§ 17.46(b)(7), 17.50(a)(2) (Vernon 1987). The Kennemores also complained of Bennett's false representations regarding supervision and inspection of work performed as an unconscionable action or course of action under section 17.50(a)(3).

After the close of the Kennemores' evidence, the trial court granted Bennett's motion for directed verdict and rendered judgment that the Kennemores take nothing. In granting the motion in its entirety, the trial court predicated its judgment on grounds that the Kennemores waived any complaint of defects, or complaint that the house was not built in a good and workmanlike manner, and were thereby estopped from asserting such claims. In affirming, the court of appeals concluded that by taking possession of the home and paying Bennett's demands, the Kennemores fully accepted Bennett's performance. The court of appeals therefore held that the Kennemores were estopped from seeking contractual relief and had waived any complaint that the work varied from the plans and specifications. 740 S.W.2d at 41.

◼ Although the court of appeals provides an accurate synopsis of cases advancing waiver and estoppel theories, *id.*, these cases involved contract actions. *See Anderson Development Corp. v. Coastal States Crude Gathering Co.*, 543 S.W.2d 402 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Phillips v. Le Gallez*, 329 S.W.2d 922 (Tex.Civ.App.—Waco 1959, no writ); *Bratcher v. Moore*, 219 S.W.2d 527 (Tex.Civ.App.—Amarillo 1949, no writ); *Collins v. Hall*, 161 S.W.2d 311 (Tex.Civ.App.—Austin 1942, writ ref'd w.o.m.). The Kennemores pleaded and relied on several statutory remedies available under the Deceptive Trade Practices–Consum-

er Protection Act. As alluded to in *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985), traditional contractual theories are not controlling in a statutory DTPA action. Curiously, the court of appeals never mentions the Kennemores' claims under the DTPA. We must therefore reexamine the viability of the grounds specified in Bennett's Motion for Directed Verdict under the provisions of that statute.

 The motion urges a waiver and estoppel theory as well as complaints of factually and legally insufficient evidence. Bennett maintains that the Kennemores waived all complaints regarding the alleged defects and are therefore estopped from asserting *any* claim for defects, including the claims under the DTPA. We disagree. The remedies under the Act are available to any consumer, and they are not waived merely because the consumer accepts the allegedly defective performance. Nothing in the language or policy of the Act requires the consumers to withhold performance themselves in order to allege violations against the other party. Such a policy would discourage the resolution of disputes and the settlement of claims without any corresponding benefits. In the absence of an express settlement or other express waiver, therefore, the Kennemores had every right to proceed with their case. The court of appeals accordingly erred in affirming the trial court's directed verdict on grounds of estoppel based on waiver. We must now determine if the directed verdict is otherwise supportable under alternative evidentiary grounds.

Viewing the evidence in a light most favorable to the Kennemores as nonmovants, *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983), we conclude that the record contains more than a scintilla of evidence in support of the DTPA claims. At trial, the Kennemores produced evidence of specific defects[1] to demonstrate that Bennett breached an implied warranty by failing to construct the home in a good and workmanlike manner, and in support of the contention that Bennett represented that his services were of a particular standard, quality or grade when they were of another. Such evidence consisted of testimony by the Kennemores themselves, expert testimony by a general contractor and the adverse testimony of Bennett. The Kennemores also introduced the original plans and photographs of the home as completed. Further, the Kennemores testified as to Bennett's representations that he would personally oversee and supervise his subcontractors. Additionally, the Kennemores testified that despite their repeated complaints as to defects observed while the home was under construction, Bennett failed to instruct his subcontractors to correct the problems. The Kennemores maintain that such evidence indicates an unconscionable act or course of action.

 To establish a breach of the implied warranty that the home would be constructed in a good and workmanlike manner, the Kennemores must show that Bennett failed to construct the home in a manner generally considered proficient by those capable of judging such work. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987). "The Contract for Construction of a House" agreed upon by the parties contains Bennett's representation that he would construct the home in a good and workmanlike manner and would do so according to the plans agreed to by

---

1. The record contains an extensive list of problems with the home about which the Kennemores had voiced continual complaints. Major problems include: every door and window leaks when it rains causing damage to carpet, doors and interior walls; improperly installed masonite siding has buckled and cracked; plumbing pipes were not adequately anchored, causing the entire house to vibrate any time water is turned on; the pipes have frozen and burst every winter; shingles frequently blow off the roof, causing the ceiling to leak; each time it rains the entire front yard and walkway are completely under water, causing the water to drain back into the house; the concrete driveway has cracked and large portions have actually broken off; the chimney, fireplace and other brickwork were substantially different from the plans; shower stall doors are oversized by ten inches; doors installed in the living room do not match paneling as called for in the plans; no door connects the garage to the back yard as specified in the plans.

the parties. The testimony offered by the Kennemores and their expert, pointing out the specific defects and variances with the original plans, provides evidence from which a jury could find a breach of implied warranty under section 17.50(a)(2). The same evidence provides some evidence of a false, misleading, or deceptive act or practice under section 17.46(b)(7). *Smith v. Baldwin*, 611 S.W.2d 611, 614 (Tex.1980), *Jim Walter Homes, Inc. v. Chapa*, 614 S.W.2d 838, 841 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ The Kennemores' final contention complains that Bennett's failure to supervise his subcontractors constituted an unconscionable act or course of action under section 17.50(a)(3). The record reflects testimony that while the house was under construction, the Kennemores continually pointed out defects and variances and that they were each time reassured by Bennett that he would speak with his responsible subcontractor. The defects and variances were never corrected and Bennett has refused to repair or in any way satisfy these complaints.

An act or practice must fit within the definition set forth in section 17.45(5) to be considered unconscionable under section 17.50(a)(3). Section 17.45(5) describes such an act which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid in a transaction involving transfer of consideration.

Tex.Bus & Com.Code Ann. § 17.45(5) (Vernon 1987). To avoid a directed verdict, the Kennemores need only produce some evidence under either definition of unconscionability. *See Brown v. Galleria Area Ford, Inc.* 752 S.W.2d 114 (Tex.1988) (Jury findings of unconscionable course of conduct supportable by evidence under either definition). We hold that the evidence satisfies the definition contained under section 17.45(5)(A). As this court held in *Chastain v. Koonce*, 700 S.W.2d 579 (Tex.1985), taking advantage of a consumer's lack of knowledge, ability or experience to a grossly unfair degree requires proof of resulting unfairness that was glaringly noticeable, flagrant, complete and unmitigated. *Chastain*, 700 S.W.2d at 584.

By submitting a competitive bid on the Kennemores' house, Bennett undertook the construction to the exclusion of other qualified builders. Testimony regarding Bennett's false representations that he would personally oversee the work, his continued reassurances that he would discuss the defects and variances with his subcontractors and his flagrant failure to correct the problems was some evidence that Bennett took advantage of the Kennemores' lack of knowledge of the construction business and lack of ability to correct the problems themselves. Such action is evidence upon which the jury could find an unconscionable act or course of action as defined under section 17.45(5)(A). Having found some evidence under section 17.45(5)(A), there is no need to consider whether any evidence exists under the alternative definition. Because there is legally sufficient evidence in support of the DTPA claims raised by the Kennemores, the court of appeals erred in affirming the directed verdict in favor of Bennett.

The judgment of the court of appeals is reversed and this cause is remanded to the trial court for a trial on the merits.