**J.B. CUSTOM DESIGN AND BUILDING and Jay Berg, Appellants,**

**v.**

**L.W. CLAWSON and Linda Clawson, Appellees.**

**No. 01–89–00732–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 1990.
Rehearing Denied Aug. 15, 1990.

Anthony D. Gunn, Dickinson, for appellants.

Mario L. Vasquez, Houston, for appellees.

Before WARREN, COHEN and DUNN, JJ.

## OPINION

WARREN, Justice.

This appeal is from the jury trial of a Deceptive Trade Practices Act (DTPA) lawsuit. The appellees, L.W. Clawson and Linda Clawson, sued J.B. Custom Design and Building for damages they allegedly suffered in connection with J.B. Custom Design's installation of piers beneath their home to prevent it from subsiding. After a jury trial, the trial court rendered a judgment awarding $24,000 in actual and additional damages and $9,000 in attorney's fees to the Clawsons.

Linda Clawson testified that she responded to a telephone solicitation in which J.B. Custom Design offered foundation repair services. Jay Berg, J.B. Custom Design's proprietor, met with the Clawsons at their home, conducted an inspection, and contracted to provide leveling services to stop the subsidence of the Clawsons' home. Linda Clawson testified that Berg represented that their house would "fall apart within the year, literally splitting down the center." He further represented that the installation of 11 piers beneath their home would correct the problem. He also said that the house would be level after the piers were added, and that the Clawsons "would have no more problems with it."

The Clawsons testified that J.B. Custom Design's attempted leveling of their house caused "wrinkles" in their kitchen linoleum, requiring its eventual replacement at the Clawsons' expense. The molding around certain doors in their home also had to be replaced, and a patio door had to be repaired. Linda Clawson testified that Berg delayed in performing these repairs, causing the Clawsons to hire other contractors. These repairs cost the Clawsons $1,403.

The parties dispute the depth of the installed piers. L.W. Clawson testified that his inspection of the worksite revealed that the piers appeared to have been installed only three feet beneath the ground. Jay Berg stated that the piers were installed in a two-step process, which first involved the digging of a 30 inch "box" and then the drilling of a hole approximately 10 feet deep in which three steel rods of that length were inserted. Berg's testimony was corroborated by a worker who helped install the shafts.

The Clawsons also testified that the workers installing the piers damaged a sewer line, causing drainage problems and the accumulation of sewage in their backyard. These problems continued for several weeks, until Berg arranged for its repair at his expense.

After the repairs, the Clawsons testified, the house was not level. Linda Clawson testified that the repair work caused structural damage to the house. The Clawsons retained another foundation company to repair that damage. The estimated cost of those repairs, which had not been performed at the time of trial, was $10,000. Finally, the Clawsons testified that they had been forced to move to another house until the repairs could be completed.

At trial, the Clawsons offered the deposition testimony of Gerald Prickette, a structural engineer, who testified that his visual inspection of the house indicated that the piers had not been properly installed, and that too few piers had been used. He testified that the piers had not prevented further subsidence.

Jay Berg testified that neither he nor anyone could guarantee that a house would remain level, even after the installation of piers. He stated that his company had tried to do the job within the constraints of the Clawsons' limited budget.

The jury found that J.B. Custom Design had failed to perform its services in a workmanlike manner; that it had represented that its services had qualities they did not have; that it had misrepresented the quality of its services; that it had failed to disclose material facts regarding its services; and that it had engaged in an unconscionable course of action in dealing with the Clawsons. All of these acts were found to be knowingly committed and the producing cause of $8,000 in actual damages. The jury also found that L.W. Clawson was entitled to $5,000 in mental anguish damages, and that his wife was entitled to $3,000.

■ In their first two points of error, the appellants complain that the trial court awarded treble damages to the Clawsons without submitting a question to the jury on that issue. Under the DTPA,

> the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the actual damages in excess of $1,000.

TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 1987). The jury found that J.B. Custom Design knowingly engaged in conduct violating the DTPA. The trial court did not ask the jury to consider awarding additional damages; instead, the court added $16,000 to the jury's award of $8,000 in actual damages.

■ By determining the "discretionary damages" issue in a jury trial of a DTPA case, the trial court disregarded the supreme court's holding in *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446 (Tex.1984). In that case, like this one, the trial court asked the jury to determine whether the defendant was guilty of "knowing" conduct in violation of the DTPA. The jury returned an affirmative finding, and the trial court trebled the jury's actual damages award. The supreme court held that the discretionary damages issue constituted an independent ground of recovery that could not be found or deemed found by the trial court. The court stated:

> Only in the absence of a jury is the award, if any, of discretionary damages under the DTPA a question for the court.... The wording of section 17.-50(b)(1) compels the conclusion that, in a

jury trial based upon the DTPA, a plaintiff who seeks to recover discretionary damages must request a jury issue on such damages. The plaintiff's failure to do so results in a waiver of recovery of those damages.

*Id.* at 448. The defendant has no duty to object to the trial court's failure to submit the issue. *Id.* at 447.

■ The Clawsons contend that their case is distinguishable because the parties agreed to submit the discretionary damages issue to the trial court. They offer the affidavit of their attorney, attached to their response to the appellants' motion for new trial, as proof of this agreement. Such an agreement was neither recorded in writing, signed, and filed with the trial court, nor made on the record in open court, as the rules require. TEX.R.CIV.P. 11. Consequently, the alleged agreement is unenforceable. *Kennedy v. Hyde*, 682 S.W.2d 525, 529–30 (Tex.1984).

Therefore, the trial court erred in determining the amount of discretionary damages. The trial court properly awarded $8,000 in actual damages plus $2,000 in additional mandatory damages. DTPA § 17.50(b)(1). The trial court's award of an additional $14,000 in discretionary damages was improper.

We sustain the appellants' first two points of error.

In their third point of error, the appellants complain that Gerald Prickette's expert testimony was insufficient because he failed to state whether faults existed "in the Highlands area of Baytown, Texas, where the repair job site was." In their fourth point, the appellants complain that the expert's testimony was insufficient evidence that work was done improperly or that it was the producing cause of damage. The fourth point also complains that the Clawsons "failed to show what damage was done prior to the pier work and what damage was done after the pier work."

■ The brief of the argument under these points does not correspond to the points of error. The appellants present no argument or authorities in support of their third point, nor much of their fourth point of error. Accordingly, the third point of error is waived, as is that portion of the fourth point unsupported by argument. *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 810 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); TEX.R.APP.P. 74(f).

■ The appellants argue that Prickette's testimony was insufficient to prove that inferior pier work was the producing cause of damage. Prickette's testimony was based on his inspection of the Clawson house. He conceded that he did not actually view any of the piers. The appellants contend that Prickette's testimony constituted circumstantial evidence that failed to dispel the possibility that geographic faults were the producing cause of the Clawsons' damage. They cite a Dallas Court of Appeals opinion in support of their argument that Prickette's testimony was therefore insufficient. *U.S. Steel Corp. v. Fiberex*, 751 S.W.2d 628 (Tex.App.—Dallas 1988), *aff'd in part and rev'd in part sub nom. Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442 (Tex.1989).

The *U.S. Steel* litigation involved claims that U.S. Steel had breached its implied warranty of merchantability in its manufacture of polyester resins, which allegedly caused the separation of fiberglass layers in swimming pools manufactured by Plas–Tex, Inc. The supreme court, agreeing with the court of appeals, held that the plaintiffs could not recover without proving that the polyester resins were defective at the time they left U.S. Steel's possession. 772 S.W.2d at 444. The supreme court noted that this proof could be made by circumstantial evidence:

A plaintiff does not ... have to use direct or opinion evidence to show that the goods had a defect; he can instead meet his burden by using circumstantial evidence. To make a prima facie showing of a defect based solely on circumstantial evidence, [plaintiff] must present evidence that it handled and applied the resin properly. Evidence of proper use

of the goods together with a malfunction may be sufficient evidence of a defect. *Id.* at 444–45 (citations omitted).

The appellants contend that the Clawsons were similarly required to prove that shifts in underground faults played no part in producing damage to their house, and that Prickette's testimony was insufficient to accomplish that task. This argument overlooks the fact that the Clawsons' lay testimony was competent proof of a DTPA violation. *Plas–Tex,* 772 S.W.2d at 444–45. The appellants do not challenge the sufficiency of the Clawsons' testimony to prove a DTPA violation; therefore, this Court cannot conduct a review of the sufficiency of that evidence. *San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 210 (Tex.1990). The appellants also fail to explain why the rule pronounced for breach of warranty cases in the *U.S. Steel* litigation, which essentially involved strict liability claims against the manufacturer of an allegedly defective product, should be broadly applied to all of the Clawsons' DTPA causes of action.

There was ample testimony from the Clawsons, unchallenged on appeal, that they were damaged by the appellants' attempts to repair their house. Much of that testimony related to the damage directly caused by the repairs, not to the damage caused by the house's continued subsidence. The evidence does not suggest that geographic faults played any part in producing the damage directly caused by the repairs. Accordingly, the possibility that the house's continued subsidence was not caused by the appellants does not present a basis for reversal.

We overrule the third and fourth points of error.

■ In their fifth point of error, the appellants assert that Jay Berg is not individually liable to the Clawsons, and that "[n]o evidence exists that Jay Berg, as an individual, took part in the construction of the piers but only appeared as an officer and agent of the corporation."

The Clawsons do not contest this point. They concede that their second amended petition dismissed Berg prior to trial. The record on appeal, however, does not include a copy of that pleading.

This point does not complain of any error. The trial court's judgment does not hold Berg individually liable. A point of error is insufficient unless "it directs the attention of the appellate court to the error about which complaint is made." TEX.R. APP.P. 74(d). Because the appellants' fifth point does not refer to any error by the trial court, it has no merit.

We overrule the fifth point of error.

■ In two cross-points, the Clawsons complain that the trial court erred in granting the appellants' motion for judgment notwithstanding the verdict, which set aside jury findings awarding the Clawsons $8,000 in mental anguish damages.

The rendition of judgment notwithstanding the verdict is proper only when there is no evidence to support the jury's findings. *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980). In analyzing such a "no evidence" point, this Court must review the record in the light most favorable to the jury findings, considering only the evidence and the inferences supporting such findings, and rejecting the evidence and the inferences contrary to them. *Id.*

At trial, Linda Clawson testified that J.B. Custom Design had caused her to fear for her safety while in her house, and that she had lost sleep from worrying over the repairs. She testified that her husband "was very upset, very angry" when he learned that the kitchen linoleum had been damaged by the leveling process. She also testified that her family's "life style is different" in their new home, because they have a smaller yard, the children attend a different school, and they have fewer contacts with their friends in Highlands.

L.W. Clawson testified that he and his wife had suffered "a tremendous amount of mental anguish, embarrassment, and distress over this situation." He testified that he sought medical attention in the form of a stress test. He further testified that he took medication for high blood pressure and for stress after the stress test

was administered, and that he had never had high blood pressure before. There was no medical testimony linking the appellants' conduct to his stress or high blood pressure.

The Clawsons argue that the jury's finding that the appellants "knowingly" engaged in violations of the DTPA entitled them to mental anguish damages. *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 118 (Tex.1984); *Pontiac v. Elliott,* 775 S.W.2d 395, 400 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

The appellants and cross-appellees respond that the Clawsons have not shown "any high degree of mental pain and distress" entitling them to mental anguish damages. They contend that the trial court properly set aside the jury's findings on that basis, and cite a Dallas Court of Appeals opinion in support of their position. *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796 (Tex.App.—Dallas 1987, no writ). In *Town East,* the Dallas court stated that plaintiffs seeking mental anguish damages "must show more than mere worry, anxiety, vexation, embarrassment or anger," and reversed a jury award of mental anguish damages because the plaintiff's testimony indicated "no more than mere worry, anger, resentment, and disappointment." 730 S.W.2d at 803.

For years, Texas law did not award damages for mental anguish unless there was proof of a willful tort or gross negligence causing the damage, or of physical injury accompanying the alleged anguish. *See, e.g., Duncan v. Lake Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex.1980); *see also* 4 J. EDGAR & J. SALES, TEXAS TORTS AND REMEDIES § 82.202[2][a] (1990).

In 1987, the supreme court held that physical injury need not be proven in a suit for the negligent infliction of mental anguish. *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex.1987). In dispensing with the physical injury requirement, the supreme court stated:

Clearly, freedom from severe emotional distress is an interest which the law should serve to protect.... Having recognized that an interest merits protec-

tion, it is the duty of this court to continually monitor the legal doctrines of this state to insure the public is free from unwarranted restrictions on the right to seek redress for wrongs committed against them. The physical manifestation requirement is one such restriction....

. . . .

... The distinction between physical injury and emotional distress is no longer defensible. The problem is one of proof, and to deny a remedy in all cases because some claims may be false leads to arbitrary results which do not serve the best interests of the public. *Jurors are best suited to determine whether and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience.*

730 S.W.2d at 654 (emphasis added).

█ The present case, unlike the *St. Elizabeth Hospital* case, involves a jury finding of knowing conduct. In DTPA actions, a finding of "knowing" conduct is sufficient to allow a plaintiff to recover mental anguish damages. *Luna,* 667 S.W.2d at 118. The *St. Elizabeth Hospital* decision nevertheless guides this Court in reviewing the jury's findings and trial court's judgment notwithstanding the jury's verdict. In this case, it is the jury, not the trial court or this Court, that is best suited to determine whether the Clawsons suffered "mere worry" or the "relatively high degree of mental pain and distress" that may be compensated by mental anguish damages. *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The Clawsons' testimony that they had experienced "a tremendous amount of mental anguish, embarrassment, and distress over this situation" raised a factual issue regarding mental anguish that the trial court properly submitted to the jury. The jury's affirmative response to the jury question was legally and factually supported by the evidence. The trial court erred in granting the appellants' motion for judgment notwithstanding the judgment.

We sustain the Clawsons' first and second cross-points.

We reform the trial court's judgment by reducing the trial court's discretionary damage award by $14,000, reinstating the jury's award of $8,000 in mental anguish damages, and rendering a judgment of $27,000, including $18,000 in damages plus $9,000 in attorneys' fees, in favor of the Clawsons. As reformed, the judgment is affirmed.