**Robert J. WILSON, Individually, and Robert J. Wilson & Associates, Inc., Appellants,**

v.

**Bob RICE, Appellee.**

No. 10–90–172–CV.

Court of Appeals of Texas, Waco.

March 28, 1991.

Rehearing Overruled April 25, 1991.

Teris Brantley and Robert J. Wilson, Robert J. Wilson & Associates Inc., Burleson, for appellants.

E.L. Gibbs, Waco, Phil Robertson, Robertson & Robertson P.C., Clifton, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

This appeal arose from a suit brought by Bob Rice against his former attorney, Robert J. Wilson, Individually and d/b/a Robert J. Wilson & Associates, Inc., under the Texas Deceptive Trade Practices Act (DTPA). The jury found that Wilson engaged in false, misleading or deceptive acts in the legal services he undertook on behalf of Rice, that Wilson's conduct constituted an unconscionable course of action, that Wilson took advantage of Rice's lack of knowledge, ability and experience and that Wilson's conduct was a producing cause of damages to Rice. Rice did not allege negligence against Wilson. The jury awarded $6,250 in actual damages to Rice. Under § 17.50(b)(1) of the Act, the court awarded Rice twice the actual damages not exceeding $1,000 in addition to accrued prejudgment interest. The judgment signed by the court in favor of Rice totaled $9,618.74 plus post-judgment interest. *See* TEX.BUS. & COMM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1991).

Wilson contends that the trial court erred in allowing Rice to testify because Rice failed to timely and adequately respond to proper discovery requests. Wilson also argues that the trial court erred in entering judgment in favor of Rice because the evidence was legally and factually insufficient to support the jury's findings of DTPA violations by Wilson. The judgment will be affirmed.

Approximately fifteen years prior to the present litigation, Wilson was hired by Rice to incorporate War–Pak, Inc., a business which designed and manufactured refuse-handling equipment located in Meridian, Texas. Rice served as chairman of the board of War–Pak until sometime in 1976 when the other owners and stockholders terminated him as chairman as well as an employee. Rice then requested that Wilson represent him in a suit against War–Pak, Inc., Amark Container Corporation and four or five of the other directors. The jury found in favor of Rice and awarded damages approximating $160,000. The defendants appealed and War–Pak filed bankruptcy. Rice then settled in early 1984 with War–Pak and another of the defendants for a total of $15,000, $5,000 of which was paid to Wilson under his fee agreement with Rice. The judgment was reversed on appeal by this Court and remanded in part to Bosque County, at which point the only remaining defendant was C.K. Hensley. *See War–Pak, Inc. v. Rice,* 604 S.W.2d 498 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). Rice testified that it was

his belief at the time that Hensley was solvent and able to satisfy the remainder of the judgment and that Wilson intended to actively pursue Hensley in the hope of recovering the remainder of the judgment, approximately $145,000. Wilson testified that the case against Hensley had no value and that Rice suffered no loss when the case was dismissed.

Following the $15,000 settlement, communications between Rice and Wilson suffered. Years passed without word from Wilson concerning the remaining portion of his suit against Hensley. Wilson did not return Rice's calls, and finally Rice contacted the Bosque County District Clerk to inquire about the status of the case, only to be informed by the District Clerk that the case had been dismissed by the court for' want of prosecution. Rice received a copy of the dismissal order from the clerk. He then attempted to confirm the dismissal with Wilson by telegram and finally met with Wilson in Wilson's office in Burleson in December 1986. Rice testified that Wilson spoke at that meeting of possibly bringing other defendants into the case and moving the suit to Johnson County. He asked for and received from Rice $500, ostensibly to cover the expenses and filing fees for the additional defendants. Wilson never acknowledged the dismissal of the original suit to Rice.

Rice stated that as a result of his own inquiries due to Wilson's refusal to return his calls and keep him informed of the suit's progress, he received letters from the district clerk's offices in Bosque and Johnson Counties in February 1987 that no new suit had been filed. Wilson contends that he had been researching the possibility of such a suit and monitoring a similar case being tried in New York. At this point, Rice retained another attorney to file the DTPA suit against Wilson which forms the basis of this appeal.

■ Wilson asserts in point one that the trial court abused its discretion in allowing Rice to testify "over [Wilson's] objection" because Rice failed to timely and fully respond to Wilson's interrogatories. In March 1989 Wilson filed and served on Rice his first set of interrogatories and request for production. In February 1990 Rice filed "skeletal" responses to the interrogatories, but never responded to the request for production. Eleven days prior to trial, Rice filed a motion for leave to list expert witnesses reflecting the names of two attorneys who would be testifying regarding the dismissal of the prior suit for want of prosecution or for failure to replead as well as the available alternatives and the pertinent time limits following the dismissal of the suit. Wilson filed in response a motion to exclude fact testimony and documentary evidence and a motion for instructed verdict. Interrogatories two and three asked about the identity of persons with knowledge of facts relevant to the suit and requested that the type and extent of their knowledge be specifically described. Rice had responded by listing himself as having knowledge of "all facts." Interrogatory four inquired about the identity of any expert who might be called as a witness, to which Rice responded, "[n]one at this time."

Wilson reurged his motion to exclude fact testimony and documentary evidence prior to opening arguments. The trial court ruled that Wilson had waived any objections he might have had to Rice's answers to the interrogatories and, therefore, any objections to Rice's testimony because he failed to request a hearing on the sufficiency of Rice's compliance with Wilson's discovery. The court allowed Rice to testify at trial. Wilson essentially argues that the trial court abused its discretion in allowing Rice to testify because Rice failed to timely respond to Wilson's discovery requests and because Rice failed to adequately answer interrogatory three so as to apprise Wilson of the specific facts of which Rice had knowledge and was prepared to testify.

Wilson, as the party seeking discovery, had the burden to file a motion to compel and/or motion for sanctions and obtain a hearing on the timeliness and sufficiency of Rice's answers. *See McKinney v. National Union Fire Ins. Co.*, 772 S.W.2d 72, 75 (Tex.1989). Wilson failed to discharge his

burden in this regard. Wilson further waived any objections to Rice testifying at trial by failing to object when Rice was actually called as a witness. *See Clark v. Trailways, Inc.,* 774 S.W.2d 644, 647–648 (Tex.1989). Wilson's motion to exclude fact testimony presented and heard immediately prior to trial preserved nothing for review. The question of whether the court reversibly erred in permitting Rice to testify is not reached. Point one is overruled.

■ In points two, three and four, Wilson complains that the court erred in entering judgment in favor of Rice because the evidence was legally or factually insufficient to support the jury's affirmative findings of Wilson's deceptive acts or practices, of his unconscionable conduct and of damages sustained by Rice as a result of Wilson's conduct. Question one of the charge asked whether Wilson engaged in any false, misleading or deceptive act or practice in his legal services which was a producing cause of damages to Rice. Question three asked what sum of money would compensate Rice for any damages resulting from Wilson's deceptive conduct, if any, inquired about in question one. Question two asked whether Wilson's conduct constituted "unconscionable actions or course of action" and was defined in the charge as:

"... an act or practice which to a person's detriment either:

 a. takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

 b. results in gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration."

Wilson argues that there was no evidence presented of consideration actually paid by Rice to Wilson for legal services and thus no evidence of a gross disparity between the value received and the consideration paid. Wilson also takes the position that Rice needed expert opinion testimony to prove his case against Wilson under the DTPA; that is, that Rice lacked the necessary qualifications to give an opinion

as to whether the conduct of his attorney in performing legal services was misleading, deceptive or unconscionable. Wilson contends these determinations are beyond the realm of common knowledge. We disagree.

■ Rice testified as the sole fact witness on his behalf and put on no expert testimony. While Rice may never have expressly stated an opinion in the precise, conclusory language used in the statute that Wilson had engaged in deceptive, false or misleading acts or practices or that Wilson's conduct was unconscionable, he did testify to the facts as viewed from his perspective as Wilson's client. The jury could have reasonably inferred from Rice's testimony that such had occurred. Furthermore, the jury was instructed "that the term 'false, misleading or deceptive act or practice' means an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous." Rice's account of Wilson's repeated nonfeasance clearly addressed the type of conduct the DTPA was intended to proscribe. *See DeBakey v. Staggs,* 612 S.W.2d 924, 924–25 (Tex.1981); *Lucas v. Nesbitt,* 653 S.W.2d 883, 886 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Because Rice made no claim of negligence against Wilson, no expert testimony regarding the appropriate standard of care was required. *See Zimmerman v. First American Title Ins.,* 790 S.W.2d 690, 696 (Tex.App.—Tyler 1990, writ denied); *Barnard v. Mecom,* 650 S.W.2d 123, 126 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

But for Rice's own efforts, he would likely have remained uninformed regarding the dismissal of the original suit and the failure to file the "new suit" for which he paid $500. Although Wilson finally offered to return the $500 in February 1988 after being contacted by Rice's new attorney, Rice never received his money. From Rice's vantage point, Wilson not only failed to take action necessary to protect the rights of his client, he allowed Rice to remain largely ignorant of steps in the

legal process and their ramifications of which Rice certainly had a right to be aware. We hold the evidence both legally and factually sufficient to support the jury's affirmative findings of DTPA violations. Moreover, the damage award was well within the range of damages shown by the evidence. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 921 (Tex.App. —Waco, 1985, writ dism'd).

The judgment is affirmed.