Ernest M. CASTILLO, et al., Appellants,

v.

B. Mills LATHAM, et al., Appellees.

No. 13–94–316–CV.

Court of Appeals of Texas,
Corpus Christi.

June 6, 1996.

Rehearing Overruled Aug. 29, 1996.

---

John Gano, Gano & Donovan, P.C., Houston, for appellants.

Gaston M. Broyles, Jr., Broyles & Pratt, Deborah R. Sundermann, Corpus Christi, for appellees.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellants sued appellees, B. Mills Latham, the Law Offices of B. Mills Latham, and Latham and Moss, for failing to file a medical malpractice action before it was barred by limitations. The Castillos alleged that Latham violated the Deceptive Trade Practices—Consumer Protection Act (DTPA), breached a contract of employment, falsely and fraudulently misrepresented himself, and was negligent. After a jury trial, the trial court granted appellees' motion for instructed verdict and rendered judgment that the Castillos take nothing. By three points of error, the Castillos contend that the trial court erred by granting appellees' motion for instructed verdict, by taking the case away from the jury, and by rendering judgment that appellants take nothing. We reverse and remand.

On January 3, 1986, Audona Castillo prematurely gave birth to twin daughters, Kay and Sara, at Taft Hospital in Taft, Texas.

The girls were immediately transferred to Driscoll Foundation Children's Hospital in Corpus Christi for surgery. After surgery, Sara survived for approximately one week. The Castillos brought suit on Sara's behalf against Driscoll Hospital and took a $6,000,-000 default judgment. The case was later settled by their attorney, Rene Rodriguez, for $70,000. Kay, blinded and otherwise neurologically impaired by the surgery, survived until February 14, 1988. Because the Castillos were discontent with Rodriguez's handling of Sara's case, he withdrew as their attorney.

According to the Castillos, on December 8, 1989, another lawyer referred them to B. Mills Latham, a personal injury specialist. The Castillos were aware that the statute of limitations on Kay's medical malpractice claim would run on February 14, 1990.[1] Appellants contend that they sought Latham's assistance with 1) Kay's medical malpractice claim against Driscoll Hospital and other health care providers and 2) the legal malpractice claim against Rodriguez for his negligent handling of Sara's claim. Latham told the Castillos that he would not proceed with the cases until they obtained a release from Rodriguez. The Castillos immediately obtained and delivered Kay's Taft Hospital records and Rodriguez's release to Latham. The Castillos subsequently obtained Kay's Driscoll Hospital records and delivered them to Latham on December 28, 1989. Noting that limitations was about to run, Latham, on January 3, 1990, summoned Ernest Castillo to his office, told him he would take both cases, and had him sign four blank employment contracts. On January 26, 1990, Latham called Ernest Castillo and told him he was filing both cases. In April 1991, Latham settled the malpractice suit against Rodriguez for $400,000. In May 1991, more than one year after limitations barred their wrongful death claim, the Castillos learned that Latham had not filed suit against Driscoll Hospital. Appellees contend that Latham was never employed to sue the hospital or any health care provider on Kay's behalf.

---

1. Rodriguez testified that he thought he sent the statutory notices of claim on behalf of Kay to all health care providers. If proper notice of the claim was given, the limitations period would have been extended to April 30, 1990. Tex.Rev. Civ.Stat.Ann. art. 4590i, § 4.01(c) (Vernon Supp. 1995).

The Castillos sued appellees for violations of the DTPA, fraudulent misrepresentation, breach of an employment agreement, and negligence. On April 25, 1994, the case proceeded to trial before a jury. When the Castillos rested their case, appellees moved for an instructed verdict. Appellees contended that there was no legally cognizable evidence of causation and damages. The trial court granted appellees' motion for instructed verdict and rendered judgment that the Castillos take nothing "for the reason that the [Castillos] failed to introduce probative evidence which was factually sufficient to create a fact issue as to all of the elements of any cause of action."

By three points of error, the Castillos contend that the trial court erred 1) by granting appellees' motion for instructed verdict, 2) by taking the case away from the jury, and 3) by rendering judgment that appellants take nothing. During oral argument, the Castillos conceded that they had not proven the necessary elements of a legal malpractice claim based on negligence. They contend, however, that the instructed verdict was improper as to the rest of their causes of action, especially the DTPA claim.

When we review an instructed verdict, we view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all evidence and inferences to the contrary. *Qantel Bus. Sys. v. Custom Controls,* 761 S.W.2d 302, 303–04 (Tex.1988); *Cecil v. T.M.E. Inv., Inc.,* 893 S.W.2d 38, 51 (Tex.App.—Corpus Christi 1994, no writ); *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 90 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.). An instructed verdict is proper when a defect in an opponent's pleadings makes them insufficient to support a judgment, the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or the evidence offered on a cause of action is insufficient to raise an issue of fact. *Kelly,* 832 S.W.2d at 90; *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). The trial court may properly withdraw a case from the jury and instruct a verdict if there is no evidence to support a material issue. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986); *Kelly,* 832 S.W.2d at 90. If we determine that there is any evidence of probative value which raises a material fact issue on any theory of recovery, then we must reverse the judgment and remand the case for the jury's determination of that issue. *Qantel Bus. Sys.,* 761 S.W.2d at 304; *Cecil,* 893 S.W.2d at 50; *Kelly,* 832 S.W.2d at 90.

After viewing the evidence in the light most favorable to the Castillos and disregarding all evidence and inferences to the contrary, we conclude that the record contains more than a scintilla of evidence to support the Castillos' DTPA claims. *See Kennemore v. Bennett,* 755 S.W.2d 89, 91 (Tex.1988). The Castillos alleged that Latham's conduct violated the DTPA because it was unconscionable and knowing.[2] Under the DTPA, a consumer may maintain an action when an unconscionable action or course of action by any person is the producing cause of actual damages. TEX.BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon 1987 and Supp.1996). A consumer of legal services may be a consumer under the DTPA.[3] *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 268 (Tex.App.—Corpus Christi 1991, writ denied); *Lucas v. Nesbitt,* 653 S.W.2d 883, 886 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). As defined in the DTPA, persons damaged by an attorney's unconscionable actions are consumers. *DeBakey v. Staggs,* 612 S.W.2d 924, 925 (Tex.1981).

Under the version of the DTPA in effect at the time the cause of action accrued, "unconscionable action" is defined as "an act or practice which, to a person's detriment: (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (B) results in a gross disparity between the value received

---

**2.** This case is governed by the version of the DTPA in effect at the time the injuries accrued.

**3.** We note that section 17.49 of the DTPA was amended by the 74th Legislature. The new statute, effective September 1, 1995, exempts "the rendering of professional services" from DTPA claims. TEX.BUS. & COM.CODE ANN. § 17.49(c)(g) (Vernon Supp.1996).

and consideration paid in a transaction involving transfer of consideration." Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 1, 1977 Tex.Gen.Laws 600, 600 (amended 1995) (current version at TEX.BUS. & COM.CODE ANN. § 17.45(5) (Vernon Supp.1996)). There must be evidence in the record to show that the defendant took advantage of the plaintiff or evidence that the consideration paid to the defendant was in gross disparity to the value of the services received. *Lucas*, 653 S.W.2d at 886. Section 17.45(5) does not expressly require that a consumer prove the mental attitude of the defendant in order to recover actual damages. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985). Section 17.45(5) is intended to provide an objective standard. *Id.* Under this standard, a consumer need only prove that he was taken advantage of to a grossly unfair degree. *Id.* This should be determined by examining the entire transaction. *Id.* The term gross should be given its ordinary meaning of glaringly noticeable, flagrant, complete and unmitigated. *Id.*

 Evidence of a misrepresentation is sufficient to support a finding of unconscionable conduct. *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 913 (Tex.App.—Austin 1991, no writ); *Rendon v. Sanchez*, 737 S.W.2d 122, 125 (Tex.App.—San Antonio 1987, no writ). Failure to perform as promised supports a finding of unconscionable conduct. *Gros*, 818 S.W.2d at 913. For a claim under the DTPA, expert testimony is not necessary to prove that an attorney, in performing legal services, acted in an unconscionable manner. *Wilson v. Rice*, 807 S.W.2d 836, 839 (Tex.App.—Waco 1991, writ denied). Lay testimony is competent proof of a DTPA violation. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444–45 (Tex. 1989); *J.B. Custom Design and Bldg. v. Clawson*, 794 S.W.2d 38, 42 (Tex.App.—Houston [1st Dist.] 1990, no writ). No expert testimony is required for representations unrelated to the rendition of legal services. *Johnson v. DeLay*, 809 S.W.2d 552, 555 (Tex.App.—Corpus Christi 1991, writ denied).

From their perspective as Latham's clients, the Castillos testified about facts and did not need expert testimony. *See Wilson*,

807 S.W.2d at 839. The Castillos testified that they both had tenth grade educations and that they trusted Latham because he was a professional who knew more about the law than they did. Latham knew that the Castillos wanted to pursue Kay's medical malpractice claim against Driscoll Hospital and the other health care providers. Latham requested a release from Rodriguez. Surely, this release was not related to the legal malpractice claim against Rodriguez, but instead was to verify that Rodriguez was no longer representing the Castillos in their medical malpractice claim against the hospital and the other health care providers. Moreover, Latham requested Kay's medical records which had nothing to do with the legal malpractice claim he ultimately filed against Rodriguez. When Latham asked Ernest Castillo to sign the employment contracts, he said that the contracts needed to be signed immediately because there was little time left before limitations ran on Kay's medical malpractice claim. Furthermore, the Castillos believed that on January 26, 1990 Latham had filed both the legal malpractice claim against Rodriguez and Kay's medical malpractice claim against Driscoll because Latham told them that he had done so. Finally, the Castillos testified that if Latham had told them in January 1990 that he would not handle Kay's case, they would have continued searching for an attorney who would pursue the claim.

Knowingly, for DTPA purposes, means actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim of actual awareness of an act or practice. § 17.45(9). Actual awareness may be inferred when objective manifestations indicate that a person acted with actual awareness. *Id.; Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex.1984). We conclude that the Castillos' testimony, if believed by the jury, would be sufficient to support a finding that Latham's conduct was unconscionable and knowing.

 For DTPA purposes, appellants must show some evidence that the unconscionable act was the producing cause of their injuries. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex.1995);

*Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred. *Boys Clubs*, 907 S.W.2d at 481; *Prudential Ins. Co. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995); *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex.1980). The evidence must show that appellees' conduct caused actual detriment, economic harm, or damage to the appellants. *Lucas*, 653 S.W.2d at 886.

The Castillos testified that when Latham told them he had not filed Kay's medical malpractice case against the hospital and health care providers, they experienced, and were still experiencing, physical illness and mental anguish in the form of heart break, devastation, nervousness, disappointment, and betrayal.

■ In a DTPA cause of action, a finding that the defendant's unconscionable actions were committed "knowingly" is sufficient to support recovery of mental anguish damages. *Luna*, 667 S.W.2d at 117; *J.B. Custom Design & Bldg.*, 794 S.W.2d at 43. Mental anguish is a recognized element of damages for such knowing violations of the DTPA and may, therefore, be compensated even in the absence of other economic or physical injuries. *See Parkway v. Woodruff*, 901 S.W.2d 434, 443 (Tex.1995); *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex.1993); *Lone Star Ford, Inc. v. Hill*, 879 S.W.2d 116, 120 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Dan Boone Mitsubishi, Inc. v. Ebrom*, 830 S.W.2d 334, 337 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ In order to establish mental anguish a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 136 (Tex.App.—San Antonio 1985, no writ). Instead, mental anguish includes a mental sensation of pain resulting from such painful emotion as wounded pride, shame, grief, severe disappointment, despair, public humiliation, or indignation. *Id.* at 136. Mental anguish damages are intangible in nature and are best left to the trier of fact. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). The jury and not the trial court is

best suited to determine whether the appellants suffered mere worry or the relatively high degree of mental pain and distress that may be compensated by mental anguish damages. *J.B. Custom Design & Bldg.*, 794 S.W.2d at 43; *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.).

■ We conclude that the Castillos' testimony that they experienced mental anguish and distress because of Latham's knowingly unconscionable actions is sufficient evidence to raise a fact issue on mental anguish. This issue should have been submitted to the jury. *See J.B. Custom Design & Bldg.*, 794 S.W.2d at 43. Accordingly, we hold that the trial court erred when it directed a verdict against the Castillos on their DTPA cause of action. We sustain appellants' first, second, and third points of error as they relate to appellants' DTPA cause of action.

Appellants have conceded that they did not prove the necessary elements of a legal malpractice claim based on negligence. Therefore, we AFFIRM the trial court's judgment on appellants' negligence cause of action.

Due to our disposition of appellants' points of error, we need not address the remaining theories of recovery. *See* TEX.R.APP.P. 90(a); *Qantel Bus. Sys.*, 761 S.W.2d at 304; *Cecil*, 893 S.W.2d at 50; *Kelly*, 832 S.W.2d at 90. We REVERSE the judgment on appellants' remaining causes of action and REMAND the case to the trial court for a new trial.

Dissenting Opinion by Justice DORSEY.

DORSEY, Justice, dissenting.

I respectfully dissent. The Castillos admitted during oral argument that they had not proven the elements of a legal malpractice claim based on negligence. There was no evidence of a critical element of their cause of action against the defendant: that they would have won the underlying suit for medical malpractice had it been filed by the defendant. And yet, the Castillos assert that they have suffered compensable mental anguish due to their attorney's misrepresentations and the resulting loss of their "day in

court." The Castillos should not be allowed to recover mental anguish damages for their lawyer's negligent failure to file a medical malpractice claim without evidence they would have been successful had it been filed.

The majority states that a knowing violation of the DTPA is sufficient to support the recovery of mental anguish damages, even in the absence of other physical or economic damages. *Lone Star Ford, Inc. v. Hill,* 879 S.W.2d 116, 120 (Tex.App.—Houston [14th Dist.] 1994, no writ). However, "[w]e must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 617–18 (Tex.1986). The case at bar is essentially a legal malpractice suit. Therefore, while I agree that a knowing violation of the DTPA is sufficient to support mental anguish damages in the absence of economic loss, it is not an appropriate rule of law in the present case.

An attorney malpractice suit requires proof of four elements: (1) the existence of a duty; (2) the breach of that duty; (3) that the breach was a proximate cause of damages; and (4) that the plaintiff was damaged. *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex.1989). The law requires a necessary showing of a causal relation between the act complained of and the injury sustained. *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223–24 (Tex.1988). The proper measure of damages in a legal malpractice case is those damages that would have been collectible but for the negligence of the attorney. *Gibson v. Johnson,* 414 S.W.2d 235, 238–39 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135 (1968). Mental anguish damages are recoverable in legal malpractice actions. *Cosgrove,* 774 S.W.2d at 666. I do not think that mental anguish damages alone will support an award for legal malpractice under the common law.

When a client sues his attorney on the ground that the attorney by his malpractice caused the loss of the cause of action, the burden of proof is on the client to prove that his original suit would have been successful but for the negligence of the attorney and to show what amount would have been collect-ible had he recovered the judgment. *Mackie v. McKenzie,* 900 S.W.2d 445, 448–49 (Tex. App.—Texarkana 1995, writ denied); *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

I see no reason to allow mental anguish damages in the absence of economic loss under a DTPA action when it is not allowed at common law. The injury required for each cause of action should be the same. The only distinction between the DTPA action and one allowed at common law is that in the latter the defendant failed to file the action, and thus violated a duty, while under the DTPA he represented that he would file the action. That is no significant difference. The requirement of economic damage should be the same for both.

The Castillos produced no evidence that appellee's malpractice or misrepresentation caused them any economic damages. Under these circumstances, where there has been no economic loss, mental anguish damages alone are inappropriate, both under the common law and the DTPA. I would therefore affirm the trial court's instructed verdict in favor of appellee.