Dorothy Gay Nell HALL, Independent Executrix of the Estate of Donald A. Hall, Deceased, Appellant,

v.

CROCKER EQUIPMENT LEASING, INC., Appellee.

No. C14–86–738–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 18, 1987.

Rehearing Denied Aug. 28, 1987.

Steven A. Leyh, Warren W. Boone, Robert D. Topping, Michael L. Grove, Houston, for appellant.

Mary W. Costley, Daniel T. Torrez, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a deficiency judgment entered against appellant following default on a promissory note executed by appellant's corporation in favor of appellee and guaranteed by appellant. A helicopter, the subject of this dispute, secured the note and was repossessed and sold following the corporation's default, resulting in a deficiency under the terms of the note. Appellant challenges the trial court's findings of statutory compliance in the sale of the collateral. We reverse the trial court's judgment and remand for a new trial.

On November 25, 1979, W–R Aviation, Inc., executed a $496,000.00 note, including principal and interest, to appellee. The note was secured by a security interest in a helicopter. Appellant, who was president of W–R Aviation, executed an individual guaranty of indebtedness. W–R Aviation defaulted on the note on November 1, 1981, and shortly thereafter requested appellee to take possession of the helicopter. The helicopter was repossessed in Houston on

December 19, 1981, and flown to South Air Aviation for sufficient repairs to secure a one-way Federal Aviation Administration permit to fly the helicopter to California for more substantial repairs prior to sale. Crocker National Bank, appellee's parent corporation, notified appellant in January 1982 of its intent to sell the collateral. After many months and numerous communications concerning the necessity of repairs, Bell Helicopter Textron at the Van Nuys Service Center in California began repairs on the helicopter; these repairs were completed in early 1983. The helicopter was sold on September 9, 1983, for $210,000.00. In January of 1985 appellee sued appellant for $237,930.85, the principal balance owed under the note, $63,-892.80 in accrued interest, and $132,344.79 for expenses incurred to transport, repair, store and insure the collateral, with a $210,000.00 offset allowed as proceeds from the sale of the helicopter. Appellee further sought post-sale interest and attorney's fees as provided in the security agreement.

The trial court entered a deficiency judgment in favor of appellee for $256,140.00 and further awarded appellee $42,500.00 in attorney's fees. It is from this judgment that appellant appeals.

In point of error three appellant contends the trial court erred in finding that the collateral was sold at a private sale, if such a finding is implied, because there was no evidence to support a finding concerning the type of sale that appellee conducted to dispose of the collateral.

The trial court found in Findings of Fact No. 16 that "[Appellant] did not receive notice of the time or place of the sale of the collateral," and in Conclusions of Law No. 1 that "[Appellee] complied with 9.504 of the Texas Commerce and Business Code [sic] by providing to [appellant] written Notice of Intent to Sell secured collateral."

The basis for appellant's argument is that since appellant did not receive notice of the time or place of sale as required for a public sale under Tex.Bus. & Comm.Code Ann. § 9.504(c) (Tex.UCC) (Vernon Supp. 1987), the trial court must have made the implied finding that the collateral was sold in a private sale, for which there is no support in the record.

In a related issue in point of error four, appellant further challenges appellee's compliance with § 9.504(c) and contends that the trial court erred in finding that appellee provided to appellant the required written notice of the intent to sell or otherwise dispose of the secured collateral. In particular appellant asserts that the notice sent by appellee to appellant failed to state whether the sale was to be conducted by private or public sale. Appellant further argues that if the sale was public, no notice was given of the time and place of sale, while if the sale was private, notice was not sent by the secured party but by Crocker National Bank and that in any event the notice was defective because it failed to adequately identify the security agreement to which the notice applied.

On January 27, 1982, Crocker National Bank mailed to appellant its Notice of Intention to Sell, Right to Redeem Repossessed or Surrendered Collateral. The notice correctly identified the collateral as well as the parties involved, indicated the amount due on the loan balance and the redemption place, and stated that Crocker National Bank intended to dispose of the collateral upon the expiration of 20 days from the date of mailing unless appellant exercised the right to redemption prior to such sale.

Section 9.504(c) provides in pertinent part, that

Disposition of the collateral may be by public or private proceedings.... [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

Testimony by Spencer Johnson, liquidation officer for Crocker National Bank, established that the helicopter was sold by private sale on September 9, 1983, to Mid South Air for $210,000.00. Further testi-

mony by witnesses for appellee concerning the steps taken to market and advertise the helicopter established that the collateral was disposed of by private sale.

■ We are aware of decisions by courts in other states that have held that the notice of intent to sell or otherwise dispose of collateral must state whether the sale is to be private or public. *See, e.g., General Motors Acceptance Corp. v. Carter*, 290 S.C. 217, 349 S.E.2d 342 (S.C.Ct. App.1986). However, § 9.504(c) does not so require. We hold the evidence was sufficient to establish the helicopter was sold by private sale. As such, the Notice of Intent to Sell did not need to state the time and place of sale. Nor are we persuaded that the correct party failed to send the notice since the evidence established that Crocker National Bank is the parent company to appellee.

Appellee complied with the notice provisions of § 9.504(c). Points of error three and four are overruled.

In point of error 1–A appellant contends the trial court erred in finding that the method, manner, time and place of the sale of the collateral was made in a commercially reasonable manner by appellee. In point of error 1–B appellant contends the trial court erred in finding that the expenses allegedly incurred by appellee in repossessing, repairing and selling the collateral were reasonable because, with the exception of $2517.90 in repair expenses, there was no competent evidence introduced concerning the reasonableness of any of these expenses.

A number of provisions of the Uniform Commercial Code as adopted in Texas address the issue of commercial reasonableness in the handling of collateral by the secured party after default. Tex.Bus. & Com.Code Ann. § 9.504 (Tex.UCC) (Vernon Supp.1987) provides in pertinent part that:

(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.... The proceeds of disposition shall be applied in the order following to

(1) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

(2) the satisfaction of indebtedness....

(b) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency....

(c) Disposition of the collateral may be by public or private proceedings ... but every aspect of the disposition ... must be commercially reasonable.

■ There has been a split in Texas appellate courts concerning which party has the burden of proof with respect to whether the sale of the collateral was conducted in a commercially reasonable manner. In *Pruske v. National Bank of Commerce of San Antonio*, 533 S.W.2d 931, 935 (Tex.Civ.App.—San Antonio 1976, no writ), the court placed the burden of proving commercial unreasonableness on the debtor. However, because the *Pruske* opinion relied on cases not arising under the U.C.C., and because the cited statute mandates the handling of the collateral by the secured party in a commercially reasonable manner, we hold that the burden of proving that the sale was conducted in a commercially reasonable manner was on appellee as the secured party. *See Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285, 287 (Tex.App.—Dallas 1985, no writ). Because the statute requires commercial reasonableness in every aspect of the preparation and sale of the collateral, we further hold that appellee as the secured party had the burden of proving not only that all repairs to the collateral were necessary but also that the charges for the repairs were reasonable.

■ Contrary to appellee's contention, with the exception of testimony by Robert Mitchell of South Air Aviation that the

**4**

$2517.90 charge to obtain the one-way ferry permit to California was reasonable for the amount of work done by his company, there is no evidence that any of the other charges for the repairs were reasonable. Although the record is replete with testimony that the repairs themselves were necessary, proof that expenditures were necessary does not furnish evidence that the charges therefor were reasonable. *Davis v. Small Business Investment Co. of Houston*, 535 S.W.2d 740, 745 (Tex.Civ. App.—Texarkana 1976, writ ref'd n.r.e.).

The trial court found in its Conclusions of Law No. 2 that "The method, manner, time and place of the sale of the secured collateral was made in a commercially reasonable manner." The trial court further found in its Findings of Fact No. 12 that "Some of the repairs which were made by the [appellee] were not reasonable to maintain the collateral; some of the repairs were reasonable." The trial court did not indicate which repairs it considered were reasonable and which were not. Further, there were no findings concerning the reasonableness of the charges for the repairs. As the evidence is insufficient to support such an implied finding, the trial court erred in finding that the sale was conducted in a commercially reasonable manner.

We sustain appellant's point of error 1–A. Because we are unable to ascertain the exact amount due under the note considering the evidentiary problems in proving the necessity of repairs and the reasonableness of the charges for the repairs, we reverse the trial court's judgment and remand for a new trial.

In light of our disposition on the issue of commercial reasonableness in the handling and sale of the collateral, it is not necessary to address appellant's remaining points of error. We further overrule appellee's cross-point of error seeking damages for appellant's prosecution of this appeal for purposes of delay and without sufficient cause.