R. Don WRIGHT, Appellant,

v.

INTERFIRST BANK TYLER, N.A., Appellee.

No. 12-87-00080-CV.

Court of Appeals of Texas, Tyler.

Feb. 18, 1988.

Marshal W. Dooley, Dooley, Rucker, Maris & Foxman, Dallas, for appellant.

M. Keith Dollahite, Potter Firm, Tyler, for appellee.

COLLEY, Justice.

In this jury case Interfirst Bank (hereinafter referred to as "the Bank"), a secured creditor, recovered a deficiency judgment against its debtor, R. Don Wright, following the Bank's private sale of the collateral under the terms of the security agreement.

Defendant/appellant Wright, by his first two points of error, argues that the court erred in granting the judgment because (1) the Bank failed to give him reasonable notification of the sale under section 9.504(c),[1] and (2) the Bank failed to conduct the sale in a commercially reasonable manner. Under his third point, he complains of the award of attorney's fees.

Plaintiff/appellee Bank in two cross-points asserts that the jury's refusals to find that it gave reasonable notice of the private sale and that the sale was conducted in a commercially reasonable manner are against the great weight of the evidence. We reverse and render judgment that the Bank take nothing by this suit.

On October 3, 1983, Wright executed and delivered to the Bank a promissory note in the original principal sum of $395,000.00, representing the proceeds of a loan from the Bank used by Wright to purchase a 1983 Beechcraft airplane for his personal and business uses. The aircraft was covered, as collateral, by a security agreement which authorized the Bank to enforce its security interest in the collateral in accordance with chapter nine of the Tex.Bus. & Com.Code Ann. (Vernon 1968 and Vernon Supp.1988).

Wright defaulted in his payments on the note in March, 1984, and delivered possession of the aircraft to the Bank on March 19, 1984. On April 2, 1984, Bank officer Bill McClellan wrote Wright concerning the status of Wright's indebtedness and advised him as follows:

You are hereby advised that [the aircraft] will be offered at public sale on April 13, 1984 at 12:00 Noon at the location of Interfirst Bank, Tyler, Texas.

This unit will be sold to the highest bidder. The proceeds thereof will be applied to your loan, plus any expenses incurred. Any balance outstanding will be your responsibility for payment unless this balance is paid in full prior to the sale date of April 13, 1984....[2]

Wright made no response to this letter nor to the letter dated March 23, 1984,[3] and made no effort to contact any officer of the Bank prior to the Bank's *private sale* of the aircraft on May 24, 1984.

McClellan testified that at the time the April 2, 1984, letter was signed, it was not his intention to conduct a public sale of the collateral.[4] He also stated that he never gave any notice of his intention to sell the plane at private sale. McClellan testified that the plane was sold at private sale to an aircraft sales broker from Mississippi, Bob Carr, for the sum of $250,000.00 on or about May 24, 1984.

McClellan, who was in charge of the Bank's efforts to collect the indebtedness, testified at length about the extent of his efforts to sell the airplane at private sale. He stated that he consulted with people in the department of InterFirst Bank Dallas that handled aircraft sales "on almost a daily basis" in order to gain knowledge

1. All references to sections herein made are to Tex.Bus. & Com.Code Ann. (Vernon Supp.1988) unless otherwise noted.

2. The letter was received by Wright on April 5, 1984.

3. The record shows that Bill McClellan, the Bank officer who made the loan, wrote Wright on March 23, 1984, informing him that if he did not pay the accrued interest on the note and

otherwise make arrangements for repayment of the note, then the Bank would "have no choice except to place [his] loan on a non-accrual basis, thereby making it necessary that we sell the plane ourselves according to the terms of our security agreement."

4. But because of an inadvertent error, the notice provided for public sale.

about methods for selling aircraft. He testified that he contacted several aircraft sales brokers, the Beechcraft factory, and the dealer who sold the airplane to Wright for the purpose of acquiring information that might be helpful in selling the airplane. He had the plane appraised[5] by a recognized authority, Nelson International. Thereafter, he contacted pilots in Tyler and Dallas respecting the value of Wright's plane because, as he put it, "I was just going at it cold *at public auction* or on the steps in taking what I could get for it." (Emphasis added.) McClellan testified that he received six bids from individuals for the airplane, five of which were for cash. The other bid was an offer to trade Florida real estate valued by appraisers of the bidder at $318,000. McClellan accepted the highest cash bid of $250,000 made by Bob Carr.

The record shows that between the dates of April 2, 1984, and May 24, 1984, McClellan contacted numerous individuals and several aircraft sales brokers in other states. McClellan admitted that he never placed any "for sale" ads in aviation magazines with national circulation, in the Wall Street Journal, or in Houston and Dallas newspapers. The evidence further shows that McClellan decided not to list the aircraft with a broker but rather to sell it himself.

John Wesley Paffenburger testified for Wright. Paffenburger qualified, and testified without objection, as an expert in the field of used aircraft sales. Paffenburger generally outlined procedures for selling used aircraft. He also rendered an opinion that the retail value of the aircraft was $385,000 in May, 1984, and that it had a wholesale value at that time of $315,000. He stated, in effect, that advertisements placed in the Wall Street Journal and aviation magazines with national circulation produce more prospective buyers, and that such broad advertisement was desirable because the "general aviation market is a

very small community in the United States, Europe, South America, and Mexico." Paffenburger further states that such character of advertising requires "generally a minimum of thirty days to put in place, and another thirty days for it to circulate."

Wright, a licensed pilot, also testified that broad "dissemination of advertising" tends "to attract a reasonable price for aircraft."

Wright contends by his first point that the court erred in granting the deficiency judgment because the Bank failed to give reasonable notification of the private sale as required by section 9.504(c). The issue regarding the reasonableness of the notice upon which the private sale was made was submitted as a fact question to the jury, who, in response to question number seven, refused to find that the Bank gave "reasonable notification of the time after which any private sale [of the collateral] would be made." The trial court disregarded[6] the negative finding.

The Bank contends that the court's disregard of the negative finding on notice was correct, because the notice given and incorporated in McClellan's letter of April 2, 1984, was "reasonable notification" under section 9.504(c) as a matter of law. Wright, on the other hand, contends that since the jury refused to find that the Bank gave the requisite notice, it is barred from bringing a suit for deficiency judgment under the authority of *Tanenbaum v. Economics Lab, Inc.*, 628 S.W.2d 769 (Tex. 1982).

In reply to this contention, the Bank argues that *Tanenbaum* is inapplicable here since sufficient notice was given. If the Bank is correct that the notice given was sufficient, then we agree that *Tanenbaum* is not applicable.

We are inclined to the view that whether the notice given in this case is sufficient under section 9.504(c) is a question of law, not a question of fact, and as Bank sug-

---

5. That appraisal was $275,205.00.

6. As requested by the Bank in its post-verdict motion for judgment.

gests, one which is unanswered by any reported Texas case.[7]

Section 9.504(c) reads, in pertinent part, as follows:

(c) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may [be made] ... at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value ... reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

We must decide in this appeal whether, under the Texas version of U.C.C., the written notice sent to Wright of a public sale to be conducted on a specific date and at a specific time and place constituted "reasonable notification" to Wright of the date after which a private sale of the aircraft would be made. The question is usually one of fact, but as we earlier concluded, in this case it is one of law.

We have carefully reviewed decisions of the courts of our sister states respecting the issue. In the main, these cases, including *DeLay First National Bank and Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976), and *Gateway Avaiation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862–863 (Mo.Ct.App.—St. Louis Dist. 4th Div.1978), hold that where a creditor gives a notice to his debtor of one character of sale (private or public) and disposes of the collateral by a sale of a different character, the notice is insufficient and does not comply with the Uniform Commercial Code, section 9.504(3).

The Texas Business & Commerce Code does not spell out the consequences of a creditor's act of selling collateral by private sale where the notice calls for disposition by public sale. Official comment 5 to U.C.C. section 9.504 reads in part: "[A]t a minimum [notice] must be sent in such time that [debtors] will have sufficient time to take appropriate steps to protect their interests by taking part in the sale ... if they so desire." Moreover, as noted by Professor Garner and John I. Alber, "it is clear that the notice requirement is intended to allow the debtor to observe the sale procedures, and to give him the opportunity to raise money, to redeem, or to persuade his friends [or others] to buy the goods."[8] Cited in support of that conclusion is language from *Mallicoat v. Volunteer Fin. & Loan Corp.*, 57 Tenn.App. 106, 415 S.W.2d 347, 350 (1966), to wit:

The purpose of ... notice, without doubt, is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property [at public auction] or have others do so, to the end that it not be sacrificed by a sale at less than its true value.

The code[9] itself instructs the courts that it is to be construed so as to promote its purposes, to simplify and to make uniform applications thereof in all jurisdictions.

■ Given these purposes and considering the text[10] of section 9.504(c), we conclude, as a matter of law, that the written notice sent to Wright that a public sale of the plane would be conducted on a specific day, time, and place did not constitute "reasonable notification" under section 9.504(c) of the subsequent private sale to Carr.

Having concluded that the notice was deficient, we now consider the consequences of that deficiency.

7. We conclude that *Hall v. Crocker Equip. Leasing, Inc.*, 737 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1981, writ denied), is inapposite.

8. Garner and Alber, *Disposition of Repossessed Goods under Article 9 of the Tex.U.C.C.*, 11 Tex. Tech L.Rev. 565 (1980).

9. Tex.Bus. & Com.Code Ann. § 1.102(a), (b) (Vernon 1968).

10. Providing for two distinct methods of sale and notice.

Wright contends that under the authority of *Tanenbaum*, the Bank's failure to give "reasonable notification" of the private sale as required by section 9.504(c) bars the Bank's deficiency suit. The Bank attempts to distinguish *Tanenbaum*, claiming that it is inapplicable to the facts of this case. Wright, responding thereto, cites and relies upon language found in *Tanenbaum*, 628 S.W.2d at 771, reading:

Section 9.504 gives the creditor the widest leeway in choosing whatever means of disposition of the collateral he considers most advantageous. He may dispose of it by public or private proceedings, in bulk or by lots, at any time or place and on any terms. The only limits on the creditor's disposition of the collateral is that it must be commercially reasonable, and must be made only after notification to the debtor if required by Section 9.504. Then and only then is he entitled to sue for a deficiency.

While we are of the opinion that the above language is obiter dictum, an analysis of the case is needless because on March 25, 1982, the Houston Court of Appeals, whose decision was reversed in *Tanenbaum*, decided *Gentry v. Highlands State Bank*.[11] In *Gentry*, the Court of Appeals reversed a deficiency summary judgment in favor of the secured creditor, holding, obviously in reliance on *Tanenbaum*, that in instances where a secured creditor brings a suit to recover a deficiency judgment, he must prove as a condition precedent that the debtor was given "reasonable notification" of the sale made of the collateral. The Supreme Court unconditionally refused the Bank's application for writ of error in *Gentry*. Hence, both *Tanenbaum* and *Gentry* are controlling precedents.

Wright's first point of error is sustained. Our ruling is dispositive of the appeal, hence we need not address Wright's second and third points.

11. 633 S.W.2d 590 (Tex.App.1982).

Our analysis of the notice issue renders the Bank's contention that the jury's negative finding in response to question number seven is against the great weight and preponderance of the evidence insupportable. The Bank's first cross-point of error is overruled.

By its second cross-point, the Bank argues that the jury's refusal to find that the sale of the aircraft was commercially reasonable is against the great weight of the evidence. Our decision on the notice issue renders any consideration of this point unnecessary. However, since that decision is subject to review, we will address the Bank's second cross-point.

After a careful review[12] of all the evidence, both that which tends to support the finding and that which tends to contradict it, we are unable to conclude that the jury's failure to find that the sale was commercially reasonable is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The Bank's second cross-point is overruled.

The judgment is reversed, and judgment is here rendered that the Bank take nothing by its suit against Wright.

SUMMERS, C.J., not participating.

12. Per *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986).