KNIGHTS OF COLUMBUS CREDIT
UNION, Appellant,

v.

Walter R. STOCK and Stock, Poff
and Company, Appellees.

No. 05–90–01069–CV.

Court of Appeals of Texas,
Dallas.

July 19, 1991.

Rehearing Overruled
Aug. 29, 1991 (Appellee).

Sept. 2, 1991 (Appellant).

Stephen L. Baskind, Karen A. Kohler, Dallas, for appellant.

Thomas P. Jackson, Dallas, for appellees.

Before STEWART, THOMAS and MALONEY, JJ.

MALONEY, Justice.

## OPINION

Knights of Columbus Credit Union appeals from a summary judgment rendered in favor of Walter R. Stock and Stock, Poff and Company.[1] The credit union asserts two points of error. It argues that the trial court erred in: (1) holding that a letter sent to Stock did not give adequate notice of proposed disposition of collateral, and (2) granting summary judgment and its determination of the effect of the insufficiency of the letter. We overrule the first point of error and sustain the second point. We

---

1. When necessary, we will refer specifically to Stock, Poff and Company. Otherwise, references in this opinion to Stock are to Walter R. Stock individually.

reverse the trial court's judgment and remand this cause for further proceedings.

### FACTUAL BACKGROUND

In 1985, Stock entered into an initial Open–End Credit Plan Agreement with the credit union. This agreement was a master or umbrella agreement. (A Loanliner agreement replaced it in September 1988.)

Pursuant to the umbrella agreement, Stock obtained several loans as follows:

1. On October 20, 1986, Stock borrowed $20,000 from the credit union.

2. Under an Open–End Loan Advance Request Voucher and Security Agreement dated March 31, 1987, the $20,000 loan was refinanced in the amount of $19,920.29 (loan number three). Stock granted a security interest in a 1981 Lincoln automobile owned by Stock, Poff and Company to the credit union.

3. Under an Open–End Loan Advance Request Voucher and Security Agreement dated February 12, 1988, Stock borrowed $10,168.80 from the credit union (loan number four). Stock granted a security interest in a 1986 Chrysler owned by Stock to the credit union.

Stock executed a Loanliner Credit Agreement and Truth in Lending Disclosure dated September 8, 1988. This was an updated version of the umbrella agreement. Under a Loanliner Advance Request Voucher and Security Agreement dated September 9, 1988, Stock borrowed $16,919.20 (loan number five). Stock granted a security interest in a 1987 Lincoln to the credit union.

At issue are the loans numbered three, four, and five. The security agreements connected to these three loans provide that each item of collateral secured each of the three loan advances. Each Open–End Loan Advance Request Voucher and Security Agreement states:

> You are giving this [security] interest to secure repayment of your Open End Advance Loan, as well as any other amounts you now owe or will owe the Credit Union. The collateral also secures your performance of all other obligations

under the Open End Credit Plan Agreement, this security agreement and any other agreement you have with the Credit Union.

The Loanliner Advance Request Voucher and Security Agreement provides:

> The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or receive in the future under the LOANLINER Credit Agreement and any other amounts you owe the credit union for any reason now or in the future. If the property description is marked with two stars (* *), the property will secure only the advance and not other amounts you owe.... When you are in default, ... [a]fter the credit union has possession of the property, it can sell it and apply the money received to any amounts you owe the credit union.

No stars appeared by the property description contained in this agreement.

Stock defaulted on all three of the loan advances. The credit union repossessed the 1987 Lincoln automobile and sent Stock a letter dated April 12, 1989. This letter purported to give notice of disposition of the collateral. The credit union sold the 1987 Lincoln at a private sale. After crediting Stock with the proceeds of the sale, the credit union sued Stock for the deficiency on loan number five and the balances due on loans number three and four. Both parties filed motions for summary judgment. The trial court granted Stock's motion for summary judgment.

The court held that the notice letter was insufficient to satisfy the requirements of the Texas Business and Commerce Code. *See* TEX.BUS. & COM.CODE ANN. § 9.504(c) (Tex. UCC) (Vernon Supp.1991). The trial court further ruled that the credit union forfeited its right to recover any deficiency and the balance on the other two loans. The court also canceled all security interests in the other property securing Stock's debts. The court also awarded Stock statutory penalties, *see* TEX.BUS. & COM.CODE ANN. § 9.507(a) (Tex. UCC) (Vernon Supp.

1991), computed on all three loan amounts, and attorney's fees.

## NOTICE OF SALE

In the first point of error, the credit union contends that the trial court erred in determining that the notice letter sent to Stock was insufficient.

■ The applicable statute provides:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent.

TEX.BUS. & COM.CODE ANN. § 9.504(c) (Tex. UCC) (Vernon Supp.1991). The purpose of the required notice is to allow the debtor an opportunity to protect his interest in the collateral. *See MBank Dallas v. Sunbelt Mfg., Inc.,* 710 S.W.2d 633, 636 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The debtor must have enough notice to enable him to redeem the property himself, find other buyers for the property, or ensure that the sale is a commercially reasonable one. *See Beltran v. Groos Bank,* 755 S.W.2d 944, 947 (Tex.App.—San Antonio 1988, no writ); *Wright v. Interfirst Bank Tyler,* 746 S.W.2d 874, 877 (Tex.App.—Tyler 1988, no writ).

We quote virtually the entire letter:

RE: Repossession and possible sale of collateral

1987 Lincoln Town Car

Loan 010019920–# 5

Dear Mr. Stock:

Because your loan was not paid in accordance with the terms and conditions of the loan contract, it was necessary to obtain possession of the collateral which was security for the loan.

The balance of your loan with the Knights of Columbus Credit Union is $16,483.12 this amount is paid in full or mutually satisfactory arrangements are made with us no later than April 22, 1989 provisions of the Security Agreement you executed at the time your loan was consummated.

The Security Agreement provides that the collateral will be sold at public or private sale and the proceeds will be applied to the expenses of the sale and to the remaining balance of your indebtedness to us.

You will be personally liable to the Credit Union for the difference between the sales price of the collateral (less expenses) and the unpaid balance of your note. Demand will be made of you for payment of the remaining balance. If the shortage (if any) is not paid promptly, we will take all legal action that we deem necessary to effect collection of the indebtedness.

■ The beginning of the letter refers only to a *possible* sale of the collateral, not that a sale *will* occur. The crucial second paragraph of the letter makes little or no sense. The third paragraph of the letter reviews the security agreement provisions for sale of the collateral at a public or private sale. The final paragraph discusses Stock's personal liability.

Section 9.504 clearly requires notice of the time and place of a public sale or notice of the time after which a private sale will take place. The letter did not give notice of the time and place of a public sale nor the time after which a private sale would occur. There was not enough information to allow Stock the opportunity to protect his interests.

The credit union relies on *Hall v. Crocker Equipment Leasing, Inc.,* 737 S.W.2d 1, 2 (Tex.App.—Houston [14th Dist.] 1987, writ denied), to support the sufficiency of its notice. Although the notice at issue in the *Hall* case did not specify whether the sale would be public or private, it did clearly specify a time after which the sale would take place, and the collateral was sold by private sale well after the time specified. *Id.* at 2–3. In contrast, this notice letter did not state that a sale would occur after a

specified time. We hold as a matter of law that the letter did not provide the required "reasonable notification" of the proposed disposition of the collateral. The trial court correctly ruled that the letter was insufficient. We overrule the first point of error.

## SUMMARY JUDGMENT

### a. Standard of Review

■ In the second point of error, the credit union maintains that the trial court erred in granting summary judgment and in determining the legal effect of the insufficiency of the notice letter. Summary judgment is proper if the summary judgment record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). We review a summary judgment bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The parties agree that there are no disputed issues of fact. The credit union attacks the summary judgment on the legal consequences of giving insufficient notice.

### b. Determination of Deficiency

The parties agree that the Texas Supreme Court has ruled that creditors must follow the notice requirements of section 9.504 to sue for any deficiency after sale of the collateral. *See Tanenbaum v. Eco-*

*nomics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982). The credit union maintains that the deficiency amount is the balance remaining on loan number five. Stock contends that the deficiency amount is the unpaid balance of all three loan advances. He reasons that, since the collateral that was sold secured all of the advances, all advances should be included. The credit union acknowledges the existence of the cross-collateralization clauses but asserts that both parties treated each loan advance (and the corresponding security agreement identifying specific collateral) as separate transactions.

■ The record does reflect that Stock applied separately for each loan advance. The agreements provided for separate monthly payments on each of the three loan advances. The three loan advance request vouchers and security agreements identified separate and distinct items of property as collateral. Nevertheless, the agreements also clearly stated that each item of collateral secured all of the debts owed.

A deficiency is "that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor." *See Kolbo v. Blair*, 379 S.W.2d 125, 130 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). The notice letter itself is dispositive on what deficiency is affected by the insufficient notice. The letter dealt with only one of the loan advances—loan number five. The beginning of the letter makes clear reference to this loan by number. The amount due stated in the body of the letter was the balance owing on loan number five. The last paragraph refers to only one promissory note. Although the letter was insufficient to provide notice of the disposition of the identified collateral, it did notify Stock that the credit union intended action only on loan number five. The fact that the collateral secured repayment of all three loan advances did not change the fact that the insufficient notice letter dealt only with one of the loans. Cross-collateralization does not magically transform three

separate loans into one loan.[2] We determine that the adverse consequences of the insufficient notice should logically affect only loan number five.

All parties seem to agree that the *Tanenbaum* rule's purpose is to discourage and prevent lender abuse concerning disposition of collateral. *See Tanenbaum*, 628 S.W.2d at 772. Any creditor who habitually fails to provide adequate notice forfeits the right to any deficiency each time it gives insufficient notice.

Stock asks us to consider the effect of the rule urged by the credit union in cases when there is no deficiency after sale of collateral. We have done so. We are unable to determine what complaint, if any, the debtor would have in such a case. If the creditor sells the collateral for an amount that extinguishes the entire debt, the debtor has no further personal liability on the debt. Moreover, if there is any surplus remaining after disposition of the collateral, the debtor gets the surplus. It is true that the debtor may not have the ability to redeem the collateral before sale. However, the debtor should be aware, as soon as collateral is repossessed, that redemption will be necessary to avoid a possible sale of the collateral.

Based on the facts of this case, we hold that the credit union cannot sue for the balance due on loan advance number five. This holding is consistent with *Tanenbaum*. Our holding penalizes the creditor in accordance with *Tanenbaum* for failing to provide adequate notice to the debtor on the one loan and one item of collateral. It does not reward the defaulting debtor by providing a windfall avoidance of personal liability on all loans owed to the creditor.

## STATUTORY PENALTIES

The credit union also argues that the trial court erred in computing the statutory penalty to be awarded to Stock. The pertinent statute provides:

(a) If it is established that the secured party is not proceeding in accordance with the provisions of this subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this subchapter. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

TEX.BUS. & COM.CODE ANN. § 9.507(a) (Tex. UCC) (Vernon Supp.1991).

■ Both parties agree that the collateral is consumer goods. They also agree that, if the notice letter is insufficient, Stock can recover the automatic statutory penalty without the necessity of proving any loss. The parties also agree that the credit service charge is the interest that accrues over the life of the loan and the principal amount means the original debt without any additions for interest or deductions for payments made. *See* 9 W. HAWKLAND, R. LORD, & C. LEWIS, UNIFORM COMMERCIAL CODE SERIES § 9–507:06, at 647–48 (1986); *Garza v. Brazos County Fed. Credit Union*, 603 S.W.2d 298, 300–01 (Tex.Civ.App.—Waco 1980, no writ).

However, the parties disagree on whether the penalty is calculated on all three loans or on loan number five only. Our previous analysis of the deficiency forfeited by the credit union also governs the statutory penalty. The credit union's non-

---

**2.** In any event, Stock's contention that the deficiency constitutes the remaining unpaid balance of all of the loans is untenable. Even if we accept his argument that the cross-collateralization clauses effectively require the court to compute the deficiency on all three loan advances, we could not determine the deficiency until *all* of the collateral securing all of the loans is sold.

There is no authority for extinguishing other valid contractual security interests because of the failure to provide reasonable notification of proposed disposition of collateral. Although *Tanenbaum* precludes the creditor from seeking any deficiency remaining, it contains no suggestion that the security interest itself is invalidated.

compliance with the notice provisions of section 9.504 involved only loan number five. We hold that the statutory penalties are computed using only the principal amount of loan number five and the credit service charge associated with loan number five.

## REMAINING SECURITY INTERESTS

 The credit union also complains in its second point of error that the trial court's canceling of the remaining security interests was error. We are aware of no law authorizing the trial court's action, nor has Stock cited any such authority. We find no UCC provision authorizing the cancellation of all contractual security interests because of a failure of notice to the debtor of proposed disposition of some collateral. We find no case suggesting that the creditor forfeits anything other than the right to a deficiency. *Tanenbaum* authorizes no such ruling. Accordingly, we hold that the credit union's remaining security interests under the applicable security agreements are valid and subsisting. The credit union retains the right to undertake all lawful steps that it deems necessary on the remaining security interests Stock gave to the credit union.

## CONCLUSION

We sustain the credit union's second point of error. We reverse the trial court's judgment and remand this cause. The trial court shall render judgment that the credit union take nothing on its claim for the unpaid balance of loan number five and render judgment against the credit union for the section 9.507 statutory penalties, to be computed on loan number five. The trial court should withdraw its order extinguishing the remaining security interests attached to loans three and four. The credit union's claim for the unpaid loans three and four is remanded to the trial court for further proceedings consistent with this opinion. Because we have substantially modified the relief awarded by the trial court, we remand to the trial court for reconsideration of both parties' claims for attorney's fees.