Cadle v. CMI 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING










NO. 03-95-00095-CV







The Cadle Company, Appellant



v.



Canyon Marinas, Inc., Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C88-776B, HONORABLE FRED A. MOORE, JUDGE PRESIDING








 The opinion issued by this Court on March 6, 1996 is withdrawn and the following
opinion is substituted in its place. 

 The principle issue in this case concerns lien priority among two co-creditors. 
Appellant Cadle Company ("Cadle") and appellee Canyon Marinas Inc. ("CMI") both have liens
on 98 boat slips located at the Canyon Lake Marina ("marina") at Canyon Lake in Comal County. 
In order to satisfy its debt and establish lien priority, CMI filed suit against debtors Canyon Lake
Associates Ltd. and related parties (collectively "CLA"), and co-creditor Cadle. Cadle also sued
the debtors to satisfy its own debt. In addition, Cadle counterclaimed against CMI, claiming that
CMI had assumed Cadle's debt and that Cadle had lien priority over CMI on the 98 slips. The
debtors failed to appear, and the trial court rendered default judgment against them. Following
a bench trial, the trial court rendered judgment that CMI's perfected security interest in the 98
boat slips was superior to Cadle's. Cadle appeals that portion of the judgment, and we will
affirm.



BACKGROUND


 CMI is the original and current owner of the marina. CMI leases the land and
water from the Army Corps of Engineers ("Corps"). The lease requires the owner to build more
boat slips if slip occupancy exceeds 90%, or the Corps can lease space to another marina on the
lake. CMI sold the marina to CLA in November 1985. CMI provided seller financing and
retained a lien on the marina. Because slip occupancy had exceeded 90%, the sale agreement
required CLA to build an additional 98 slips. CMI's seller-financing lien did not cover the 98
slips.

 Meeco Marinas Inc. ("Meeco") built and financed the construction of CLA's
additional 98 slips. Meeco retained a lien on the 98 slips and perfected its security interest by
filing a UCC-1 statement on February 20, 1986. No continuation statement was filed on the
Meeco lien until November 12, 1993.

 Parkway Bank ("Parkway") provided a letter of credit to CLA beginning in March
1986, which was subsequently renewed and extended several times. At one such renewal,
Parkway acquired a lien on the 98 slips and perfected its security interest by filing a UCC-1
statement on June 15, 1987. A continuation statement was filed on April 2, 1992. Cadle is the
successor in interest of the Parkway debt.

 CLA experienced cash flow problems, and following a debt restructuring with
CMI, CMI sued for judicial foreclosure on the marina in early 1988. In March 1988, CMI and
CLA reached a settlement agreement. As part of the agreement, CMI would foreclose its seller-financing lien and waive any deficiency therefrom. 

 CMI further agreed to buy CLA's additional 98 boat slips. As consideration, CMI
agreed to assume the note CLA owed to Meeco. Shortly thereafter, CMI bought Meeco's debt
and took an assignment of Meeco's interest.

 CMI also agreed to execute a $75,000 note to CLA, who would in turn pledge and
negotiate the note to Parkway. Parkway provided an estoppel letter stating that when the note is
paid in full, Parkway would release its lien on the 98 slips. CMI has not executed the $75,000
note. CMI has been in continuous possession of the 98 slips since March 1988.

 On December 22, 1988, CMI sued CLA on the Meeco debt, seeking judicial
foreclosure on the 98 slips. CMI joined Cadle, requesting declaratory judgment that both the
Meeco lien and the deficiency claim had priority over Cadle's lien. Cadle sued CLA on the
Parkway debt, also seeking judicial foreclosure on the 98 slips. In addition, Cadle counterclaimed
against CMI, claiming that CMI had assumed the Parkway debt and that Cadle had lien priority
over CMI on the 98 slips. 

 CLA failed to appear, and the court rendered default judgments against CLA in
favor of both CMI and Cadle. Following a bench trial, the trial court rendered judgment that the
Meeco lien on the 98 boat slips was superior to the Parkway lien, but that any deficiency on the
Meeco debt was inferior to the Parkway lien. In addition, the court ordered a judicial foreclosure
on the 98 slips, allocating the proceeds between CMI and Cadle.


DISCUSSION 


 In point of error seven, Cadle argues that the Meeco lien was inferior to the
Parkway lien because the Meeco lien's perfection lapsed. The Meeco security interest was
originally filed and perfected on February 20, 1986. CMI did not file a continuation statement
within five years of that date. Hence, Cadle argues that the Meeco lien's perfection lapsed and
became unperfected and inferior to the later, yet continuously, perfected Parkway debt. See Tex.
Bus. & Com. Code Ann. § 9.403(b) (West 1991) (the "Code") (filed financing statement lapses
and security interest becomes unperfected unless continuation statement is filed within five years
of original).

 CMI responds that it retained a continuously perfected security interest by
possession when it took over the 98 slips in March 1988. See Tex. Bus. & Com. Code Ann.
§ 9.305 (West 1991). The Code allows CMI to perfect its security interest in the 98 slips by
either filing a financing statement or by possession. See Tex. Bus. & Com. Code Ann. §§ 9.302,
9.305 (West 1991). CMI perfected by filing in February 1986 and then by possession in March
1988. CMI has remained in continuous possession of the 98 slips since March 1988. The
Parkway lien was perfected by filing in June 1987. 

 Because the Meeco finance statement lapsed, CMI must show that it can "tack" its
two means of perfection together to obtain priority over Cadle's lien. Section 9.303(b) of the
Code reads:



If a security interest is originally perfected in any way permitted under this chapter
and is subsequently perfected in some other way under this chapter, without any
intermediate period when it was unperfected, the security interest shall be deemed
to be perfected continuously for the purposes of this chapter.



Tex. Bus. & Com. Code Ann. §§ 9.303(b) (West 1991). Thus, the Code expressly permits CMI
to tack the filing and possession means of perfection together and relate its perfection back to
February 1986. See First Interstate Bank v. Interfund Corp., 924 F.2d 588, 593-94 (5th Cir.
1991) (interpreting Texas law); Muir v. Jefferson Credit Corp., 202 A.2d 33, 36 (N.J. 1970)
(interpreting an identical statute). Accordingly, CMI's lien is superior to Cadle's. We overrule
point of error seven. 

 In point of error one, Cadle contends that CMI acted commercially unreasonably
by taking control of the 98 slips in March 1986 and waiting six years to dispose of them. 
Therefore, Cadle argues, CMI was estopped from pursuing the Meeco debt. See Tex. Bus. &
Com. Code Ann. §§ 9.504 (West 1991); Tannenbaum v. Economics Lab. Inc., 628 S.W.2d 769
(Tex. 1982). 

 Section 9.504 of the Code requires that a creditor act in a commercially reasonable
manner when disposing of collateral. If a creditor fails to do so, it elects to retain the collateral
in lieu of the debt, barring a claim for deficiency. Tannenbaum, 628 S.W.2d at 771-72. 

 Whether a creditor has disposed of collateral in a commercially reasonable manner
is generally a question of fact. Gordon & Assoc., Inc. v. Cullen Bank/Citywest, N.A., 880
S.W.2d 93, 96 (Tex. App.--Corpus Christi 1994, no writ). Section 9.504 of the Code expressly
permits a creditor to lease collateral so long as the lease is commercially reasonable. See Tex.
Bus. & Com. Code Ann. § 9.504(a) (West 1991). 

 The intended commercial use of the 98 slips was to lease them to tenants. The
record reveals that the slips generated healthy revenues over the applicable time period. Given
this evidence, we cannot say that CMI's treatment of the collateral was commercially
unreasonable. Accordingly, we overrule point of error one.

 In point of error three, Cadle urges that CMI assumed the Parkway debt as a matter
of law and that CMI should be required to pay Cadle on that debt. Cadle argues that the evidence
was legally and factually sufficient to show that CMI had assumed the Parkway debt. (1) 

 We review findings of fact for legal and factual sufficiency of the evidence by the
same standards used to review jury findings. Okon v. Levy, 612 S.W.2d 938, 941 (Tex.
App.--Dallas 1981, writ ref'd n.r.e.) (citing Hall v. Villarreal Dev. Corp., 522 S.W.2d 195 (Tex.
1975)). 

 In deciding a legal-sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all of the evidence to the contrary. If there
is some evidence in support of the finding, the point of error must fail. If there is no evidence
to support the finding, we must then examine the entire record to see if the contrary proposition
is established as a matter of law. Sterner v. Marathon Oil, 767 S.W.2d 686, 690 (Tex 1989);
Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas N.O.R.R. v. Burden, 203 S.W.2d 522,
528-31 (Tex. 1947); see generally William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 523 (1991); Michol O'Connor,
Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 When reviewing a verdict to determine the factual sufficiency of the evidence, we
must first consider and weigh all of the evidence and should set aside the judgment only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex.
L. Rev. 515, 523 (1991).

 The record contains evidence that, as part of the settlement agreement between CMI
and CLA, (1) CMI would waive pursuing any deficiencies on foreclosure against CLA; (2) CMI
and CLA agreed that CMI would execute a $75,000 note and deliver it to CLA, who in turn
would pledge and negotiate the note to Parkway; and (3) Parkway provided an estoppel letter
stating that at such time as the note is paid in full, Parkway would release its lien on the 98 slips. 
According to this version of the evidence, CMI did not assume the Parkway debt on behalf of
CLA. Instead, CLA still remained liable on the Parkway debt, and CMI had no obligation to pay
Parkway. Indeed, the record reveals that CMI expressly disavowed that it intended to assume the
Parkway debt. 

 Given this evidence, we cannot say that Cadle has proved as a matter of law that
CMI assumed the Parkway debt or that the court's finding was so against the weight of the
evidence as to be clearly wrong and unjust. We overrule point of error three.

 In point of error two, Cadle contends that, in an earlier proceeding involving these
98 slips, CMI took one position which was inconsistent with the position that CMI took at trial. 
More specifically, Cadle contends that CMI had earlier agreed (1) not to pursue a deficiency
against the Meeco lien, and (2) to assume payment on the Parkway (later Cadle's) note. Cadle
further contends that CMI took exactly opposite positions in the trial court. Therefore, according
to Cadle, the evidence showed that CMI was judicially estopped from asserting a second,
inconsistent position. See, e.g., State Farm Fire and Casualty Co. v. Taylor, 832 S.W.2d 645,
649 (Tex. App.--Fort Worth 1992, writ denied).

 Cadle's argument is misplaced. In arguing judicial estoppel, Cadle presupposes
that CMI took earlier inconsistent positions. However, the evidence was sufficient to show that
CMI did not assert inconsistent positions. In our discussion under point of error three, we
observed that the evidence was sufficient to show that (1) CMI had waived pursuing a deficiency
against CLA, but not Meeco, and (2) CMI never assumed payment on the Parkway note. Because
the evidence is sufficient to show that CMI never took inconsistent positions, the doctrine of
judicial estoppel does not apply to the instant cause. We overrule point of error two. In points
of error four and five, Cadle contends that the trial court improperly admitted evidence of CMI's
income and expenses attributable to the 98 slips. 

 In Cadle's second notice of deposition to Mr. Dawson, CMI's representative, Cadle
requested documents showing the amount and calculation of income and expenses CMI intended
to attribute to the 98 slips. In response to Cadle's request, CMI filed a motion for a protective
order, objecting both generally and specifically to all of Cadle's requests. Neither party sought
a hearing concerning CMI's objections and motion for protective order, and Dawson did not
produce the information at his deposition.

 At trial, CMI offered Plaintiff's Exhibit 19 ("PX 19") which was a series of ledger
sheets showing the income attributable to the 98 slips. Cadle objected, stating that the evidence
was inadmissible because it had not been provided in response to its discovery request. See Foster
v. Cunningham, 825 S.W.2d 806, 808 (Tex. App.--Fort Worth 1992, writ denied) (failure to
provide requested discovery justifies exclusion of evidence). The court overruled the objection. 


 CMI also offered Plaintiff's Exhibits 27-37 ("PX 27-37") which were various
documents detailing the income and expenses attributable to the 98 slips. Cadle again objected
on the basis that the information had not been provided pursuant to their discovery request. The
trial court overruled the objection and admitted the evidence.

 When a party objects to a discovery request, and the requesting party fails to seek
a hearing on the matter, there is no duty to provide the discovery. See Crum & Forster, Inc. v.
Monsanto Co., 887 S.W.2d 103, 136 (Tex. App.--Texarkana 1994, no writ); Wilson v. Rice, 807
S.W.2d 836, 838-839 (Tex. App.--Waco 1991, writ denied).

 Because Cadle never sought a hearing on CMI's protective order, CMI had no duty
to provide the requested discovery. Since CMI had no duty to produce, Cadle cannot complain
that the evidence must be excluded pursuant to Foster. We overrule points of error four and five.

 The trial court found that CMI derived $29,338.64 as net profits from operating
the 98 slips. The court applied this amount to the Meeco debt, with the rest to be satisfied from
a judicial sale of the 98 slips. In point of error six, Cadle contends that the court erroneously
applied only $29,338.64 against the Meeco debt. More specifically, Cadle argues that CMI failed
to adduce legally or factually sufficient evidence to show that the expenses attributed to
maintaining the 98 slips were "reasonable and necessary."

 The court computed the profit from the 98 slips by calculating the actual income
attributable to the 98 slips minus a percentage of the total marina expenses allocated to the 98
slips. Cadle urges that it is unreasonable and unnecessary for CMI to be able to deduct expenses
incurred in maintaining non-slip marina amenities from the income derived from the slips. Instead,
Cadle urges, CMI should only be able to deduct the expenses actually associated with maintaining
the slips.

 A secured party in possession of collateral may charge expenses against the debtor
as long the expenses are reasonable and necessary to the custody, preservation, use, or operation
thereof. Tex. Bus. & Com. Code Ann. § 9.207(b)(1) (West 1991). The secured party in
possession of the collateral has the burden of proving that the expenses were reasonable and
necessary. Hall v. Crocker Equip. Leasing, 737 S.W.2d 1, 3 (Tex. App.--Houston [14th Dist.]
1987, writ denied).

 Dawson testified that the non-slip marina amenities (e.g. restaurant, party boat,
boat & RV rentals, etc.) were not profitable and barely broke even. Dawson also testified that
the amenities were necessary in order to maintain high slip-occupancy rates. Cranes Mill Marina,
the only other marina on Canyon Lake, does not have amenities, and its slip occupancy is nearly
thirty percent lower than Canyon Lake Marina's. According to Dawson, the amenities played a
critical role in leasing the slips. 

 Given Dawson's testimony, we cannot say that the evidence was legally or factually
insufficient to support the trial court's finding that the entire marina expenses were reasonable and
necessary in order to maintain the slips. We overrule point of error six.



CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's
judgment.



 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: May 29, 1996

Do Not Publish 

1.   Whether one has assumed a debt is generally a question of fact. See Rosestone
Properties Inc. v. Shliemann, 662 S.W.2d 49, 52 (Tex. App.--San Antonio 1983, writ ref'd
n.r.e.). The trial court framed its finding that CMI did not assume the Parkway debt as a
conclusion of law. 


. The court overruled the objection. 


 CMI also offered Plaintiff's Exhibits 27-37 ("PX 27-37") which were various
documents detailing the income and expenses attributable to the 98 slips. Cadle again objected
on the basis that the information had not been provided pursuant to their discovery request. The
trial court overruled the objection and admitted the evidence.

 When a party objects to a discovery request, and the requesting party fails to seek
a hearing on the matter, there is no duty to provide the discovery. See Crum & Forster, Inc. v.
Monsanto Co., 887 S.W.2d 103, 136 (Tex. App.--Texarkana 1994, no writ); Wilson v. Rice, 807
S.W.2d 836, 838-839 (Tex. App.--Waco 1991, writ denied).

 Because Cadle never sought a hearing on CMI's protective order, CMI had no duty
to provide the requested discovery. Since CMI had no duty to produce, Cadle cannot complain
that the evidence must be excluded pursuant to Foster. We overrule points of error four and five.

 The trial court found that CMI derived $29,338.64 as net profits from operating
the 98 slips. The court applied this amount to the Meeco debt, with the rest to be satisfied from
a judicial sale of the 98 slips. In point of error six, Cadle contends that the court erroneously
applied only $29,338.64 against the Meeco debt. More specifically, Cadle argues that CMI failed
to adduce legally or factually sufficient evidence to show that the expenses attributed to
maintaining the 98 slips were "reasonable and necessary."

 The court computed the profit from the 98 slips by calculating the actual income
attributable to the 98 slips minus a percentage of the total marina expenses allocated to the 98
slips. Cadle urges that it is unreasonable and unnecessary for CMI to be able to deduct expenses
incurred in maintaining non-slip marina amenities from the income derived from the slips. Instead,
Cadle urges, CMI should only be able to deduct the expenses actually associated with maintaining
the slips.

 A secured party in possession of collateral may charge expenses against the debtor
as long the expenses are reasonable and necessary