**MISSOURI STATE CREDIT UNION,
Plaintiff–Respondent,**

v.

**Danny J. WILSON and Carole
J. Wilson, Defendants–
Appellants.**

**No. 26347.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 21, 2005.

Tyce S. Smith, Waynesville, for Appellants.

Duane E. Schreimann, Michael J. Schmid, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Danny J. Wilson and Carole J. Wilson ("Defendants") appeal a judgment entered against them on a credit card debt. In 1996, Defendants entered into an initial Open–End Loan Liner Credit Plan Agreement ("Credit Agreement") with Missouri State Credit Union ("Credit Union"). This agreement was a master or umbrella agreement and the initial credit agreement provided that "[p]roperty given as security under this Plan or for any other loan will secure all amounts you owe the credit union now and in the future."[1] Subsequent to the agreement, Defendants obtained two loans. Under an Open–End Voucher and Request Agreement dated March 11, 1999, Credit Union advanced to Defendants $36,000, loan # 62613006, for purchase of a pickup truck. Defendants granted Credit Union a security interest in the pickup truck. On July 14, 1999, Defendants applied for and received from Credit Union a VISA Gold credit card.

---

1. The issue of whether proper attachment and perfection occurred so that the pickup truck actually cross-collateralized both loans was not before this Court. Credit Union admitted at trial that the pickup cross-collateralized both loans.

Defendants defaulted on both loans and received two separate notices of right to cure default, one for the auto loan and one for the credit card account. Unable to cure the default, Defendants surrendered the pickup truck. The Credit Union sent a letter to Defendants after they had surrendered the truck, notifying them that they had 15 days from the date of the letter to cure the default on the delinquent auto loan and redeem the vehicle before the Credit Union sold the truck. The notice was dated December 9, 2001, and referenced only the auto loan by number. Eleven days later, the Credit Union sold the truck.

Credit Union sued Defendants in a two-count Petition: for a deficiency on the auto loan after a credit for the proceeds of the sale of the pickup truck and for the balance due on the credit card debt. The court held that, pursuant to section 400.9–614,[2] the notice letter on the sale of the pickup truck was insufficient and, therefore, Credit Union was barred from recovering the deficiency on the auto loan; however, the trial court found Defendants liable on the credit card debt. The trial court treated the two loans separately and stated that pursuant to section 400.9–601(a)(1) a secured party "[m]ay reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure."

It is undisputed that the Credit Union failed to give the proper notice to Defendants regarding the sale of the truck and the finding on the deficiency judgment for the truck debt has not been challenged in this appeal. Defendants claim that the failure of the Credit Union to follow procedures in one loan affects the disposition of all loans secured by the same collateral; therefore, the question before us is whether the inadequate notice to Defendants on the debt secured by the truck forecloses collection efforts on any other debt secured by the same collateral.

■ Defendants contend the trial court incorrectly applied or interpreted section 400.9–615, which provides how the proceeds of a disposition of foreclosure are distributed. Defendants argue that the proceeds from the sale of the truck should have been applied to all the loans in default secured by the pickup truck; therefore, a single deficiency judgment should have been entered, which would have included the balance due on the credit card. Defendants conclude that if the balance due on the credit card were to be included in the deficiency judgment, then Credit Union would also be barred from recovering it under the "absolute bar" rule. The "absolute bar" rule prohibits a creditor from recovering a deficiency judgment after the sale of collateral on a defaulted loan where the creditor has not properly notified the debtor of the sale of the collateral. *RWR, Inc. v. DFT Trucking, Inc.*, 899 S.W.2d 875, 878 (Mo.App. S.D.1995).

The parties agree that this is a case of first impression in Missouri as Missouri courts have not specifically addressed whether a creditor is obligated to apply proceeds from a foreclosure sale to all loans in default secured by the same collateral pursuant to a master or umbrella loan agreement. Both parties claim the resolution of the matter is governed by section 400.9–601(a), which provides in pertinent part,

   (a) After default, a secured party has the rights provided in this part and, except as otherwise provided in section 400.9–602, those provided by agreements of the parties. A secured party:

---

**2.** All references to statutes are to RSMo 2000, unless otherwise specified.

(1) May reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure;

and section 400.9–615(a), which provides in pertinent part,

(a) A secured party shall apply or pay over for application the cash proceeds of disposition under section 400.9–610 in the following order to:

. . . .

(2) The satisfaction of obligations secured by the security interest or agricultural lien under which the disposition is made.

Both parties concede that the first half of the clause in section 400.9–615(a)(2) mandates that proceeds be applied to the satisfaction of obligations secured by the piece of collateral sold; however, Credit Union argues that the second half of that clause, "under which the disposition is made," mandates that the proceeds only be applied to the loan for which the foreclosure sale occurred, whereas Defendants claim that the proceeds must be applied to any and all loans secured by collateral.

"Construction of a statute is a question of law." *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). The purpose of statutory construction is to determine the legislature's intent in enacting the statute and to give effect to that intent. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. banc 1997). Statutes are read in their plain, ordinary, and usual sense. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). "To determine whether a statute is clear and unambiguous, this [C]ourt looks to whether the language is plain and clear to a person of ordinary intelligence." *Russell v. Missouri State Emples. Retirement Sys.*, 4 S.W.3d 554, 556 (Mo.App. W.D. 1999). "The court will only look past the plain and ordinary meaning of a statute when the language is ambiguous or leads to an illogical result." *Id.*

■■■ It is clear that the absolute bar rule does not affect the debtor's liability on a debt distinct from that in connection with which the collateral was sold. *McKesson Corp. v. Colman's Grant Village, Inc.*, 938 S.W.2d 631, 635 (Mo.App. E.D.1997). In *McKesson*, the creditor, McKesson Corporation, filed an action against debtor and the guarantors of two promissory notes and an open account. *Id.* at 632. After selling collateral securing the two promissory notes, the McKesson Corporation sued defendants to obtain a deficiency judgment and to recover the outstanding balance on the open account. *Id.* On appeal, the guarantors argued that failure to give adequate notice barred the recovery of any deficiency judgment and recovery of the outstanding balance on the open account. *Id.* at 633. Although the court reversed the trial court's award of a deficiency judgment on the promissory notes, the court rejected guarantors' argument with respect to the open account debt, stating that previous cases cited by guarantors did not address the specific situation where the note and account obligations are separate. *Id.* at 635. The court went on to say nothing indicated that the open account was secured by the same collateral and affirmed the judgment against the guarantors on the open account debt. *Id.* In *McKesson*, the court stated that strict compliance with notice provisions is enforced because deficiency judgments after repossession of collateral are in derogation of common law because deficiency judgments were unheard of at common law. *Id.* at 633.

The *McKesson* court was not presented with facts at issue in this case where Defendants executed an umbrella credit agreement with the Credit Union and later

applied for separate loans, which were secured by the same item of collateral. The Defendants defaulted within the same time period, but the notice of foreclosure sent to the Defendants referenced only the auto loan. Clearly, Credit Union could have brought suit for the deficiency judgment on the auto loan without bringing suit for the credit card debt. Credit Union could have sued for a deficiency judgment on the auto loan and subsequently brought an action on the credit card debt. It is mere coincidence that Defendants defaulted on both of the loans at the same time and Credit Union combined both actions into one suit. In other words, Credit Union had a separate remedy for each separate debt and treated the debts as separate in its notices to Defendants regarding the redemption of the pick-up. The policy of strict compliance with the notice provisions does not make sense on purchases made with a credit card where no additional collateral was provided.

We find persuasive the reasoning set forth in *Knights of Columbus Credit Union v. Stock,* 814 S.W.2d 427, 433 (Tex.App. 1991), in which the court found that cross-collateralization does not transform three separate loans into one loan. *Id.* at 431–32. The debtors had executed a similar umbrella credit agreement with the credit union and later applied separately for three loans all secured by the same piece of collateral, and the debtors defaulted on all three loans. *Id.* at 429. The court found that notice from the credit union identified that the proceeds of the foreclosure sale applied to only one loan and could "find no UCC provision authorizing the cancellation of all contractual security interests because of a failure of notice to the debtor of proposed disposition of some collateral." *Id.* at 431, 433. The court stated that its holding penalized the creditor for failing to provide adequate notice to the debtor on the one loan and one item of collateral; however, "[i]t does not reward the defaulting debtor by providing a windfall avoidance of personal liability on all loans owed to the creditor." *Id.* at 432. Likewise, in *Milliorn v. Finance Plus,* 973 S.W.2d 690, 693 (Tex.App.1998), the Texas court cited the decision in *Knights of Columbus* holding that a calculation of deficiency judgment should not include a loan which was not listed on the notice of sale of collateral.

■ Section 400.9–601 provides a secured creditor with options in which the creditor can proceed; specifically, section 400.9–601(a)(1) provides that after default a secured party "[m]ay reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." If we were to hold that the proceeds from the disposition of collateral must be applied to all loans in default which are secured by that collateral, then secured creditors would not have the choice provided for in section 400.9–601. We hold that when there are two separate loans secured by the same collateral, the creditor may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure without affecting its claim in the second loan. We recognize there might have been a different result in this case had both loans been referenced in Credit Union's notification of the right to cure the default prior to the sale of the truck, however, such is not the issue before us. The judgment is affirmed.

PREWITT, P.J., and PARRISH, J., concur.